917 A.2d 437 (2006)
2006 VT 113
In re Appeal of ARMITAGE et al.
No. 04-454.
Supreme Court of Vermont.
November 9, 2006.
Motion for Reargument and Motion for Clarification Denied January 4, 2007.
*438 Stephanie J. Kaplan, East Calais, for Appellants.
Vincent A. Paradis and Daniel P. O'Rourke of Bergeron, Paradis & Fitzpatrick, LLP, Essex Junction, for Appellees.
Present: REIBER, C.J., DOOLEY, JOHNSON, SKOGLUND and BURGESS, JJ.
¶ 1. BURGESS, J.
Interested neighbors ("neighbors") appeal an Environmental Court order granting Pittsford Enterprises, LLP and Joan S. Kelly ("applicants") a conditional use permit and site plan approval to construct a new post office in the Town of Pittsford. The proposed site is located at the intersection of Route 7 and Plains Road. In 2002, neighbors appealed the zoning board of adjustment's (ZBA) grant of a conditional use permit to the Environmental Court. The court reversed the ZBA and denied the application, without prejudice, because of erosion, traffic volume and traffic safety problems. Neither side appealed. In January 2003, applicants submitted a revised application which the ZBA approved. Again, neighbors appealed to the Environmental Court. After trial on the merits, the Environmental Court approved applicants' proposal, finding that the erosion and traffic issues were resolved by the new application and new evidence. The court's approval was given on condition that applicants take additional specific steps to provide for traffic safety. This appeal followed. Neighbors argue that: (1) relitigation of traffic volume and safety issues at the intersection of Route 7 and Plains Road should have been barred by collateral estoppel; (2) the Environmental Court's findings of fact were not supported by the evidence, nor were the conclusions of law supported by the findings; and (3) the conditions imposed by the court were invalid. We reverse.
¶ 2. In neighbors' first appeal to the Environmental Court, the court denied applicants' post office proposal "without prejudice," finding that the application did not meet the requirements of § 2.12.1(b) and (e) of the town's zoning bylaws governing *439 approval of conditional use permits. The court stated that applicants' proposal did not comply with subsection (b) because it did not adequately address potential erosion problems at the site, and did not comply with subsection (e) because it presented three potentially adverse effects to area traffic: vehicles exiting the project driveway could not safely make a left turn onto Plains Road; the additional traffic brought by the project turning left from Plains Road onto Route 7 during peak conditions would deteriorate traffic movement to an unacceptable level; and the absence of vegetation or signs to screen the proposed emergency access gate to the property from Route 7 posed a traffic hazard. Neighbors argue that some of the problems with the Route 7 intersection identified in the 2002 decision were not addressed in applicants' subsequent application and that relitigation of the same problems should have been barred by collateral estoppel. Applicants reply that collateral estoppel does not apply for several reasons, including that the Environmental Court's 2002 decision was not a final order because it was made "without prejudice" to their right to resubmit their application. We agree with neighbors. The revised application should not have been considered absent substantial modifications to the plans to address or alleviate the traffic-flow problems identified in the Environmental Court's earlier order.
¶ 3. We review the Environmental Court's interpretation of zoning ordinances and findings of fact for clear error. In re Gaboriault, 167 Vt. 583, 585, 704 A.2d 1163, 1166 (1997) (mem.). Conclusions of law are reviewed de novo. In re Beckstrom, 2004 VT 32, ¶ 9, 176 Vt. 622, 852 A.2d 561 (mem.).
¶ 4. Collateral estoppel, or issue preclusion, "[does] not purport to prohibit litigation of matters that never have been argued or decided." 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure: Jurisdiction 2d § 4416, at 386 (2002). Rather, issue preclusion generally bars relitigation of an issue that was already litigated and decided. Trickett v. Ochs, 2003 VT 91, ¶ 10, 176 Vt. 89, 838 A.2d 66. Issue preclusion applies when: (1) it is asserted against one who was a party in the prior action; (2) the same issue was raised in the prior action; (3) the issue was resolved by a final judgment on the merits in the prior action; (4) there was a full and fair opportunity to litigate the issue; and (5) its application is fair. Id. The doctrine generally applies to zoning so that "a zoning board or planning commission may not entertain a second application concerning the same property after a previous application has been denied, unless a substantial change of conditions ha[s] occured." In re Carrier, 155 Vt. 152, 158, 582 A.2d 110, 113 (1990) (quotations omitted). Applicants bear the burden of showing changed circumstances. Id. at 158, 582 A.2d at 114. The changed-circumstances requirement is satisfied when a revised proposal addresses all concerns that prevented approval of the prior application. Id. at 159, 582 A.2d at 114. Despite the general rule limiting successive applications, applicants contend that the successive-application doctrine[1] does not preclude consideration of their second application because the Environmental Court's decision was not a final judgment, the issues were not the same, applying collateral estoppel would be unfair, and there were substantial changes in the second application.
*440 ¶ 5. As a preliminary matter, we address applicants' argument that neighbors are barred from asserting preclusion because neighbors' statement of questions on appeal to the Environmental Court "raised the very issues they seek to have barred by collateral estoppel." This argument misconstrues the question neighbors presented to the court: "Whether the applicant has made changes `to the Plains Road/Route7 intersection (and the screening of the emergency access gate) sufficient to address the problems discussed [in the 2002 decision].'" The question goes on to list specific problems identified in the 2002 decision. Applicants maintain that the problems raised by neighbors in this question gave applicants the right and obligation to respond by presenting evidence on those problems. We conclude, to the contrary, that neighbors' question did not waive preclusion but rather asserted it by asking whether the successive application was substantially changed to address the previously identified problems. As discussed below, the permissible response was for applicants to show that the renewed application did address all of the problems. Applicants were not entitled by this question to relitigate whether the problems, already decided, were present in the first place.
¶ 6. We next address applicants' argument that the successive-application doctrine does not apply because the Environmental Court's 2002 decision was not a final judgment. In support of this argument, applicants point to the court's denial of the conditional use permit "without prejudice to the Applicant's submittal to the ZBA of the same or a revised building design" with changes to address the court's stated concerns. The test for final judgment is whether the judgment "makes a final disposition of the subject matter before the Court." State v. CNA Ins. Cos., 172 Vt. 318, 322, 779 A.2d 662, 666 (2001) (internal quotations omitted). The court's denial "without prejudice" is merely a recitation of the successive application doctrine articulated in Carrier  that applicants could reapply with a substantially altered application that addressed the reasons for the previous application's denial. Consideration of the substantially altered successive application presents a new subject matter to the ZBA, and to the Environmental Court on appeal. Thus, the court's denial of an application is a final disposition of that particular application's compliance with applicable laws and regulations.[2]
¶ 7. Put another way, the 2002 decision was a final judgment because it was conclusive, not merely tentative, and was procedurally definite. Scott v. City of Newport, 2004 VT 64, ¶ 12, 177 Vt. 491, 857 A.2d 317 (mem.) (citing Restatement (Second) of Judgments § 13, cmt. g (1982)). The decision was conclusive and definite despite the possibility of future applications for the same project. See id. (finding grant of a site-plan permit to be a final judgment for purposes of issue preclusion, though permit was never used and eventually expired). The parties were given a full opportunity to litigate the issues, and all matters that "should or could properly *441 [have been] settled at the time and in the proceeding then before the court" were so settled. CNA Ins., 172 Vt. at 322, 779 A.2d at 666. Consequently, the Environmental Court's "denial without prejudice" was a final judgment of that application for preclusion purposes and conferred no greater right to reapplication than is allowed by our successive-application doctrine.
¶ 8. Applicants argue that barring review of their second application would be unfair because a second application receives de novo review  and thus should not be viewed as relitigation of the same application. As Carrier explains, however, a revised application for the same development is not a per se new issue for purposes of applying the successive application doctrine. Rather, the applicant must show that there has been a substantial change in the application or the circumstances. 155 Vt. at 158-59, 582 A.2d at 113. Nor does this amount to unfair surprise to applicants; Carrier has been settled law for fifteen years. The Environmental Court's denial of the first application "without prejudice" to applicants' ability to resubmit their application with revisions that address all identified concerns could not reasonably be interpreted as conveying greater rights than permitted by our established successive-application doctrine.
¶ 9. Finally, we consider whether modifications made to applicants' proposal were sufficient to overcome the successive-application doctrine and allow the court to rehear the case. We encourage, but do not require, the trial court to make an explicit finding of changed circumstances before considering a second application, so long as the court's findings implicitly indicate that the revised proposal is sufficiently changed to meet all concerns that prevented prior approval. Id. at 158-59, 582 A.2d at 113. The court's 2002 decision identified potential erosion problems at the site and three traffic concerns as bases for denying the application. According to the court's 2004 decision, the revised proposal sufficiently addressed the potential erosion problems and two of the three traffic concerns  the addition of a vegetation screen across the Route 7 emergency access and a redesign of the entrance and exit drives to locate the project's exit onto Plains Road farther from the Route 7 intersection to eliminate a potentially dangerous left turn onto Plains Road.
¶ 10. The revised proposal did not, however, make any modifications to address the court's expressed concern that increased traffic from Plains Road turning left onto Route 7 would adversely affect traffic flow on Route 7. The court's 2002 decision stated:
Without some redesign [of the intersection] to accommodate an increase in the volume of traffic turning left . . . during peak conditions, that turning movement in the intersection will deteriorate to an unacceptable level. . . . [T]herefore, the proposal can be expected to adversely affect the traffic on roads and highways in the vicinity.
The revised application did not include any changes to the proposal to address this concern. Rather, applicants brought forth additional evidence in the form of testimony from Agency of Transportation officials to demonstrate that traffic flow at the intersection would not be adversely affected. Nothing in the record suggests that the same testimony was not available or the same evidence could not have been known to applicants when the traffic-volume issue was raised at the first hearing. This relitigation of an issue with additional evidence that was previously available is precisely what issue preclusion is intended *442 to prevent. See Berlin Convalescent Ctr. v. Stoneman, 159 Vt. 53, 60, 615 A.2d 141, 145-46 (1992) (describing issue preclusion as a balance between giving a litigant an adequate day in court and preventing repetitious litigation of what is essentially the same dispute). We do not find any implicit indication in the Environmental Court's decision that the revised proposal met the concern expressed in 2002 regarding increased traffic volume. In the absence of such indication, consideration of the revised application is foreclosed by the successive application doctrine. In reaching this conclusion we do not needlessly place procedure over substance, but rather seek to uphold the important policy of encouraging applicants to be thorough in their initial applications in the interest of finality and judicial economy.
¶ 11. Having concluded that the revised application should not have been considered absent changes that addressed all areas in which the previously denied application did not comply with regulations, as opposed to merely offering different evidence on a matter settled by the earlier decision, we do not review neighbors' challenges to specific findings of fact and conclusions of law. Nor do we take up the matter of the court's imposition of future obligations upon applicants as a condition of approval.
Reversed.
NOTES
[1] Neighbors assert "issue preclusion" as the basis for denying the application. We use the term "successive-application doctrine" henceforth because of the specific issue-preclusion rules developed for zoning applications.
[2] Applicants' citation of Zingher v. Department of Aging & Disabilities, 163 Vt. 566, 664 A.2d 256 (1995), as an example of a similar situation in which a board's decision was not final, and issue preclusion was therefore inapplicable, is unpersuasive. There, an administrative board denied an individual's request for certain equipment and training as part of a rehabilitation plan "at the present time" until the individual could show the necessity of the particular assistance required. Id. at 571, 664 A.2d at 258. The continued review of a disabled individual's evolving needs is distinct from a zoning application for a design or use that either does or does not meet established standards.