2009 VT 58

**In re Sisters and Brothers Investment Group, LLP
(Colchester Site Plan Application)**

[978 A.2d 448]

No. 08-273

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed May 29, 2009

104

*Jon Anderson* and *David W. Rugh* of *Burak Anderson &
Melloni, PLC*, Burlington, for Appellant.

*David H. Greenberg*, Burlington, for Appellee.

¶ 1. **Reiber, C.J.** Appellant, a convenience store (Cumberland
Farms), appeals from an Environmental Court decision recogniz-
ing a developer's (Sisters and Brothers Investment Group, or
"SBI") vested right to apply under the terms of a since-repealed

zoning regulation to construct a competing convenience store in Colchester. We affirm.

¶ 2. We recounted many of the underlying facts in a prior appeal involving SBI and the Town of Colchester. See *In re Sisters & Brothers Inv. Group*, No. 2004-495 (Vt. May 5, 2005) (unreported mem.), available at http://vermontjudiciary.org/d-upeo/eo04-495.mht. Briefly stated, in 2002 SBI filed a conditional-use-permit application with the Colchester Development Review Board (DRB). The Town's position at the time of the application was that a convenience store with gasoline pumps was not a permitted use in the district in which SBI's property was located, and that such an establishment would be allowable only if it gained approval as a conditional use.[1] Accordingly, Town planning officials "encouraged SBI to first seek conditional use approval before it sought site plan approval for its proposed project." SBI noted the Town's position in the cover letter accompanying its conditional-use application: "Since it is our understanding that the [DRB] has concerns related to the construction of new gas stations within this area, we are submitting [SBI's] application for Conditional Use only at this time."

¶ 3. The DRB denied the conditional-use application, and the Environmental Court affirmed, concluding that the project was not a permitted use and did not meet the requirements for conditional-use approval. On May 5, 2005, however, this Court reversed the Environmental Court's decision as clearly erroneous. See *id.*, slip op. at 3-4. We need not reexamine that decision exhaustively here. In pertinent part, we determined that SBI's proposed use was a permitted use under the plain language of the zoning regulations in effect at the time of the conditional-use application. Thus, it had not been necessary for SBI to apply for a conditional-use permit at all under the zoning regulations in effect at the time of the application, although as SBI notes, the Town encouraged SBI to do so. While the conditional-use-permit appeal

---

[1] Conditional use is defined in the regulations in effect in 2002 as "[a] use or lot size, which because of public convenience and necessity and its effect upon the neighborhood, shall be permitted only upon the approval of the Zoning Board of Adjustment after due notice and public hearing and a finding that it will not be detrimental to the general comprehensive plan or to adjacent and surrounding property. Also required is a site plan review by the Colchester Planning Commission." Town of Colchester Zoning Regulations § 101 (Oct. 8, 2001). See also 24 V.S.A. § 4414(3).

was pending, however, the Town had amended the zoning regulation to expressly prohibit SBI's proposed use.

¶ 4. We concluded that, despite the amendment, the "case is governed by the regulations existing at the time [of the conditional-use application], however, and the Table of Permissible Uses allows SBI to put its Colchester property to use as a convenience store with gasoline pumps." *Id.*, slip op. at 4. Accordingly, we reversed and remanded "for entry of judgment." *Id.* Cumberland Farms was not a party to the appeal just described, although its attorney did appear at at least one hearing concerning the conditional-use-permit application.

¶ 5. Following our 2005 decision, SBI submitted a site-plan application to build a convenience store with gas pumps on the Colchester property. That application was materially identical to the project proposed in the conditional-use application. Cumberland Farms opposed the application. The DRB concluded that the regulations in effect in 2002 applied to the entire application, and that a convenience store with gas pumps was a permitted use, but limited the gross floor area of the convenience store to 2,000 square feet. SBI appealed to the Environmental Court, and Cumberland Farms cross-appealed.

¶ 6. Cumberland Farms moved for partial summary judgment, contending that the 2005 regulations should have been applied, and that the application should have been denied because those regulations prohibit convenience stores with gas pumps altogether. The Environmental Court granted the motion in part, citing our decision in *In re Jolley Assocs.*, 2006 VT 132, ¶ 17, 181 Vt. 190, 915 A.2d 282. The court concluded that SBI's site-plan application was separate and distinct from its earlier conditional-use application. Therefore, the court held that "SBI's pending site plan application should be reviewed in accordance with the zoning regulation in effect when that application was filed (i.e.: the 2005 Regulations and not the 2002 Regulations), subject however to SBI's vested right to use approval of the proposed project." That is, while SBI retained a vested right to use the property as a convenience store with gas pumps due to its earlier conditional-use application, the other aspects of the site-plan application would be evaluated under the regulations in effect at the time of the site-plan application.

¶ 7. The Environmental Court conducted a site visit, held a one-day trial on the remaining contested issues, and issued a

decision and order on the merits. The court concluded that the project conformed with the applicable provisions of the 2005 zoning regulations, and that the DRB had erred in limiting the gross floor area of the convenience store to 2,000 square feet. Thus, the court approved the project, subject to conditions not pertinent to this appeal. Cumberland Farms appealed.

¶ 8. Cumberland Farms contends, as a threshold matter, that the Environmental Court erred in concluding that SBI had a vested right to use the property as a convenience store with gas pumps. The thrust of Cumberland Farms' argument on this point is that, because the proposed use was a permitted use under the 2002 regulations, SBI's conditional-use application was not "proper" and thus vested no rights.

¶ 9. Our vested-rights cases have, as Cumberland Farms notes, hewn to the principle that rights vest only when a "proper application" is filed. See *Smith v. Winhall Planning Comm'n*, 140 Vt. 178, 181-82, 436 A.2d 760, 761 (1981); *Jolley Assocs.*, 2006 VT 132, ¶ 11. The threshold issue presented in this appeal is simply *which* rights vest, when, and for what reason. The parties agree that SBI, by filing its conditional-use application, acquired a vested right to have that application considered under the regulations then in effect. Cumberland Farms contends that the right goes virtually no further than this, however, and that SBI's right to use its property as a convenience store with gas pumps was certainly extinguished before the Environmental Court approved SBI's site-plan application. For the reasons set forth in the ensuing discussion, we disagree with Cumberland Farms and conclude that the Environmental Court did not err.

¶ 10. As noted, our decision in the appeal stemming from SBI's conditional-use application closed with the express holding that SBI had a right to use its property in Colchester as a convenience store with gas pumps, because that use was permitted under the zoning regulations in effect at the time of the conditional-use application. As a general matter, that decision "is the law of [the] case on the points presented throughout all the subsequent proceedings therein, and no question then necessarily involved and decided will be reconsidered by the Court in the same case on a state of facts not different in legal effect." *Coty v. Ramsey Assocs.*, 154 Vt. 168, 171, 573 A.2d 694, 696 (1990) (quotations omitted). It marks no radical expansion of our vested

rights jurisprudence to conclude that the narrow "use" question was "necessarily involved and decided" in our 2005 entry order. As we noted in the order, we were aware at the time of the intervening amendments to the Colchester zoning regulations. Thus, the argument Cumberland Farms advances now — that those amendments preclude SBI from constructing a convenience store with gas pumps — was necessarily rejected in our 2005 entry order. Had we agreed with Cumberland Farms that SBI's conditional-use application had not vested SBI with the right to apply to build a convenience store with gas pumps, we would have been bound to dismiss the 2005 appeal as moot. See *In re Keystone Dev. Corp.*, 2009 VT 13, ¶¶ 6-7, 186 Vt. 523, 973 A.2d 1179 (mem.) (dismissing appeal because rights did not vest by virtue of "the mere suggestion to the City that a property owner would like to undertake ill-defined work at an unspecified time," and thus the intervening amendment of applicable zoning regulations rendered appeal moot).

■ ¶ 11. Our holding today is a narrow one. When a town erroneously informs a landowner that a proposed use is not permitted, the landowner then submits a conditional-use application rather than a site-plan application in reliance on that representation, and the town then amends its regulations to explicitly bar the use it maintained was not permitted, the applicant has a right to apply for site-plan approval with the benefit of the original use determination.[2] Interested parties who received notice of the conditional-use determination and subsequent appeal of that determination but chose not to participate may not later contest issues necessarily decided therein, such as the determination that a convenience store with gas pumps is a permitted use at SBI's Colchester property. See 24 V.S.A. § 4472.

¶ 12. Cumberland Farms next contends that the Environmental Court erred by declining to remand the site-plan application to the DRB. The remand is necessary, or at least advisable, accord-

---

[2] Because there is no colorable contention here that SBI has delayed or acted in bad faith, this case does not require us to resolve the more difficult questions that might arise if a landowner in SBI's position were dilatory in filing the site-plan application that relies on the vested rights determined in a conditional-use proceeding. We note, however, that our decision today does not create an open-ended right of unlimited duration. See generally 4 P. Salkin, Am. Law of Zoning § 32:7, at 32-21 (5th ed. 2008) (noting that vested rights are often limited in duration by statute or judicial decisions).

ing to Cumberland Farms, because the DRB should have the opportunity in the first instance to evaluate the application under the 2005 regulations. Again, we disagree. The Environmental Court is endowed by the Rules for Environmental Court Proceedings with discretion to "affirm, reverse, or modify the decision of the tribunal appealed from, *may* remand the case for further proceedings . . . , and *may* expressly set forth conditions and restrictions with which the parties must comply." V.R.E.C.P. 5(j) (emphasis added). Appellant contends that the Environmental Court exceeded this authority, and the authority granted by 24 V.S.A. § 4472(a), however, because the DRB never had the opportunity to rule on the application of the 2005 regulations to the project.

¶ 13. The DRB, of course, had the same opportunity as the Environmental Court; it simply decided instead that the 2002 regulations applied, and rendered its decision thereunder. The Environmental Court's determination that the 2005 regulations should apply instead, and its decision not to remand, are entirely ordinary incidents of that court's exercise of de novo review.

■ ¶ 14. Thus, it was no abuse of discretion for the court not to remand; as the court itself noted, given the history of this litigation, it was "certain that [the Environmental Court would] be called upon to ultimately make the necessary legal determinations." In light of that certainty, the Environmental Court was well within its discretion to rule on the matter without remand. Indeed, a remand on these facts would appear to have been contrary to the mandate of Rule 1 of the Vermont Rules for Environmental Court Proceedings: "The rules shall be construed and administered to ensure summary and expedited proceedings consistent with a full and fair determination in every matter coming before the court."

¶ 15. Cumberland Farms also takes issue with the Environmental Court's construction of the 2005 regulations' definition of "convenience store." Specifically, Cumberland Farms contends that, under the definition, the "gross floor area" is measured from exterior wall to exterior wall, with no exceptions for areas not used for sales, and that SBI's proposed convenience store is thus approximately 1,600 square feet too large. The court construed the definition to the contrary.

¶ 16. We review the Environmental Court's construction of zoning regulations with deference, and will uphold that construc-

tion unless "clearly erroneous, arbitrary or capricious." *In re Weeks*, 167 Vt. 551, 554, 712 A.2d 907, 909 (1998). We employ familiar rules of statutory construction in our review; pertinent here is the maxim that we will give words and phrases their ordinary meaning and strive to give effect to every part of the ordinance. *In re Stowe Club Highlands*, 164 Vt. 272, 279, 668 A.2d 1271, 1276 (1995).

¶ 17. The 2005 zoning regulations define "convenience store" as "[a] retail store containing less than 2,000 square feet of gross floor area designed and stocked primarily to sell food, beverages, and other groceries to customers." Town of Colchester Zoning Regulations § 12.02 (Sept. 13, 2005). The regulations further define "floor area, gross," as follows:

> The gross area of all floors of all principal and accessory buildings on a lot, measured from the exterior face of the exterior walls, or in the case of a common wall separating two buildings, from the center line of such common walls. Gross floor area shall include such features as porches, balconies, breezeways, walkways, and raised platforms, if each is enclosed.

*Id.* The Environmental Court noted, however, that the term "gross floor area" is modified, in the definition of "convenience store," by the phrase "designed and stocked primarily to sell food, beverages, and other groceries to customers." The court found this phrasing to be clear and unambiguous, and concluded that "convenience stores are limited, not to 2,000 square feet in total area, but to 2,000 square feet in area devoted to the stocking and selling of groceries to customers."

■ ¶ 18. This construction of the regulations is not clearly erroneous, arbitrary, or capricious. Rather, it is the only construction that gives effect to the modifying phrase "designed and stocked primarily to sell food, beverages, and other groceries to customers." See *Stowe Club Highlands*, 164 Vt. at 279, 668 A.2d at 1276 (regulations should be interpreted to give effect to every part). Nor is the construction in any way contrary to the plain meaning of the words used.[3] We find no error.

---

[3] Because we conclude that the plain language of the regulations supports the Environmental Court's construction, we need not consider the propriety of the Environmental Court's reliance on the past practices of the DRB. If there was any

¶ 19. Finally, Cumberland Farms argues that the Environmental Court erred in not remanding the site-plan application to the DRB when, in response to Cumberland Farms' objections, SBI submitted a revised site plan. Cumberland Farms contends that the revisions were material and substantial and, thus, that the new site plan "undoubtedly has different impacts on the Town and neighboring landowners." Cumberland Farms does not state what those differing impacts are, and its contention that the changes were material and substantial is directly contrary to the Environmental Court's finding on this point. The court expressly found that the changes were *not* so material as to require remand, although it did address the objection.

¶ 20. Cumberland Farms also contends that if the revised site plan was *not* sufficiently different to require a remand, then it could not be considered at all under *In re Armitage*, 2006 VT 113, 181 Vt. 241, 917 A.2d 437. We held in *Armitage* that a "revised application should not have been considered absent changes that addressed all areas in which the previously denied application did not comply with regulations." *Id.* ¶ 11. Cumberland Farms argues that, under *Armitage*, SBI's alternative site plans can *never* be considered in the first instance by the Environmental Court: they are either different enough to require a remand, or they cannot be considered at all.

¶ 21. This heads-I-win-tails-you-lose approach is certainly not mandated by *Armitage*, which is the only authority Cumberland Farms cites for the proposition. If applicants were barred from presenting minor revisions to the Environmental Court in response to concerns expressed by interested parties, site-plan review would become a procedural ping-pong match: any change would result in a remand for municipal consideration, followed by another appeal to the Environmental Court. The process would repeat every time an applicant revised its plans to accommodate the concerns of neighbors or other interested parties. While truly substantial changes to the form or type of an application do require remand, see *In re Torres*, 154 Vt. 233, 236, 575 A.2d 193, 195 (1990), the Environmental Court was correct in holding that revisions to a site plan that do not materially change the pending

error in that reliance, it was harmless in light of the plain language of the regulation.

application or the type of permit requested are lawful and do not necessarily require a remand. There was no error here.

*Affirmed.*