**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

|                                                      |     |                            |
|------------------------------------------------------|-----|----------------------------|
| **In re Martin & Perry, LLC, Final Plat Application** | } } } | **Docket No. 222-10-08 Vtec** |

**Decision on Motion for Summary Judgment**

This appeal arises out of a decision by the Town of Westford Planning Commission, denying a request by Appellee-Applicant Martin & Perry, LLC ("Applicant"), for final plat approval for a 3-lot subdivision of 15.4± acres along Vermont Route 128 in Westford. The Town of Westford ("Town") has filed a motion for summary judgment, and Applicant has responded in opposition.[1]

**Factual Background**

For the sole purpose of putting the pending motions in context, we recite the following material facts, which we understand to be undisputed unless otherwise noted:

1. Applicant owns a 15.4± acre parcel of land along Vermont Route 128 in the Town of Westford. The land is "primarily an old gravel pit." (Ex. 4q at 1.)

2. At some time before November 29, 2007, Applicant submitted an application for sketch plan review of a proposal to subdivide the 15.4± acres into 3 separate lots.

3. On November 29, 2007, the Town issued a notice of completion of site plan review. (Ex. 2.) In that notice, the Town stated that Applicant would need to submit a final plat application. (Id.) The notice also listed a number of issues that Applicant needed to consider "[p]rior to submitting [its] final plat application." (Id.) First on that list was a warning "that the Planning Commission is restricted by Sections 6.1.1. and 7.9.7 of the Subdivision Regulations." (Id.) These section numbers refer to provisions of the Subdivision Regulations ("Regulations") that address (among other things) development on steep slopes with a grade of more than 25%.

4. On May 28, 2008, Applicant submitted a final plat application for his proposed 3-lot subdivision. (See Exs. 4a–4q.)

5. The final plat application proposes creating 3 single-family building lots, with on-site wells and wastewater systems. Applicant asserts that the proposed development would impact only 3.5± acres of the 15.4± acres that Applicant owns.

---

[1] Applicant is represented by Vincent A. Paradis, Esq., and the Town is represented by Joseph S. McLean, Esq.

6.    As a former gravel pit, the property includes a significant amount of naturally-occurring and manmade steep slopes with a grade in excess of 25%. (Applicant's Ex. A.) While Applicant's project proposes to impact only a small percentage of those slopes, it is undisputed that the project would impact both naturally-occurring and manmade slopes with a grade in excess of 25%. (Id.)

7.    On September 17, 2008, the Town Planning Commission issued a decision, unanimously denying Applicant's request for final plat approval. The denial was based upon Applicant's failure to comply with the steep slopes provisions in Regulations §§ 6.1.1 and 7.9.7. The Planning Commission's decision is the subject of this appeal.

### Discussion

The issues raised in this appeal are fairly narrow: although the parties dispute whether Applicant's final plat application complies with the steep slopes provisions in Regulations §§ 6.1.1 and 7.9.7, the parties have stipulated that Applicant's final plat application complies with all other aspects of the Regulations. Thus, our only role in this dispute is to determine whether there is compliance with Regulations §§ 6.1.1 and 7.9.7.

The Town has filed for summary judgment, and Applicant has responded in opposition and requested that this matter proceed to trial. In considering the Town's pending motion, we note that summary judgment may only be granted when "the pleadings, depositions, [and] answers to interrogatories, . . . together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). Generally, the burden of proof is on the party requesting summary judgment. Chapman v. Sparta, 167 Vt. 157, 159 (1997). In reviewing a motion for summary judgment, "the Court must consider the facts presented in the light most favorable to the nonmoving party." Madkour v. Zoltak, 2007 VT 14, ¶ 12, 181 Vt. 347.

In light of this standard, we are unable to conclude that either side is "so clearly correct as to be entitled to a judgment 'as a matter of law'" on the ultimate issues raised in this appeal. Berlin Dev. Assocs. v. Dep't of Soc. Welfare, 142 Vt. 107, 110 (1982) (quoting V.R.C.P. 56(c)). That said, we are able to address a portion of the legal issues raised in this appeal, and conclude that summary judgment is appropriate on some of those issues.

We review the legal issues raised in this appeal de novo. See 24 V.S.A. § 4472(a); 10 V.S.A. § 8504(h); V.R.E.C.P. 5(g). In a de novo hearing, we are directed to consider the

pending application "'as though no action whatever had [previously] been held.'" Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11 (1989) (quoting In re Poole, 136 Vt. 242, 245 (1978)). With this standard in mind, we address four issues that have been raised by the parties' briefs.

## I.     Whether the Regulations Differentiate Between Naturally Occurring Slopes and Manmade Slopes

Applicant appears to argue at various points that the Regulations' restrictions against development on steep slopes apply only to naturally occurring slopes. Thus, Applicant seems to claim that an abandoned gravel pit such as the one at issue here (which not surprisingly contains a number of manmade steep slopes) should be less restricted in its development than a parcel containing only naturally occurring steep slopes. We disagree. We find nothing in the Regulations that make such a distinction. Rather, Regulations §§ 6.1.1 and 7.9.7 both refer only to "steep slopes" with a grade of more than 25%. Further, the policy reasons for restricting development on steep slopes—including worries about increased erosion and water runoff from such areas—apply equally to manmade slopes as they do to naturally occurring slopes. For these reasons, we **GRANT** partial summary judgment to the Town on this legal issue and conclude that the Regulations treat these different types of steep slopes without distinction.

## II.     Whether Regulations § 7.9.7 Applies to Applicant's Proposed Project

Although Applicant claims that Regulations § 7.9.7 does not apply to the proposed project, we find no legal basis for reaching such a conclusion. Regulations § 7.9.7 is titled "Topography" and reads as follows: "Consideration in lot layout shall be given to topographic drainage and soils conditions. Steep slopes of 25% grade or greater are unsuitable [for] development of structures, roads, and public utilities."

Applicant's briefing on this issue is limited to one paragraph in which Applicant states that "the Town cannot show that [Applicant]'s proposal has any roadways, building sites or utilities on a grade exceeding 25%." (Applicant's Resp. to Town's Mot. for Summ. J. at 5–6.) This statement caused a fair amount of confusion for the Court, since it seems to stand in direct contrast to several other material representations by Applicant. For instance, Applicant states earlier in that same brief that 5,770 square feet "of naturally occurring slopes >25%" are "impacted to construct the access road." (Id. at 2; accord Applicant's Ex. A.)

Although Applicant does not explain how to reconcile these statements, it appears as though Applicant interprets Regulations § 7.9.7 as only applying to the physical placement of

3

structures on slopes over 25% in grade, rather than to development leading up to the placement of those structures. Thus, because Applicant apparently plans to level various steep slopes to bring them under 25% in grade before Applicant places structures, roads, or utilities in these areas, Applicant believes that Regulations § 7.9.7 is inapplicable.

When called upon to interpret land use provisions, we are directed to "rely upon normal rules of statutory construction." Agency of Natural Res. v. Weston, 2003 VT 58, ¶ 16, 175 Vt. 573. Thus, it is our duty to interpret the plain language of Regulations § 7.9.7 and "to avoid absurd and illogical results . . . in favor of [a] reasonable construction." Fraser v. Sleeper, 2007 VT 78, ¶ 12, 182 Vt. 206.

In light of these standards, we find Applicant's interpretation of Regulations § 7.9.7 untenable. This section refers to "development of structures, roads, and public utilities." Regulations § 7.9.7 (emphasis added). Under a plain language interpretation, the leveling of an area to make it fit for structures, roads, or utilities, is part of the "development" of that area. Further, were it otherwise, an applicant could avoid steep slopes provisions simply by leveling large parts of his parcel before ever seeking a permit—a result that appears to contradict the spirit, if not the letter of the Regulations. See Fraser, 2007 VT 78, ¶ 12. For these reasons, we **GRANT** partial summary judgment to the Town on this legal issue and conclude that Regulations § 7.9.7 is applicable to Applicant's proposed subdivision.

### III. Whether the Regulations Are an Absolute Prohibition of the Development of Steep Slopes with a Grade of More Than 25%

The Town reads Regulations §§ 6.1.1 and 7.9.7 as providing an absolute prohibition (absent a waiver) of the development of steep slopes with a grade of more than 25%. Regulations § 6.1.1 states the following:

> Land shall not be subdivided in such a way that building, including structures, roads, and utilities, occurs on land that is unsuitable due to flooding, improper drainage, steep slopes greater than 25%, soils that are shallow to bedrock or have a high water table condition, rock outcroppings, adverse earth formations or topography, utility easements or other features which will reasonably be harmful to the safety, health, and general welfare of the present or future inhabitants of the subdivision and/or its surrounding areas.

Far from a model of clarity, this Regulation clearly prohibits some type of subdivisions, but is unclear how broad that prohibition is. In particular, the parties dispute the scope of the reference to what "will reasonably be harmful to the safety, health, and general welfare" of the

4

area or its inhabitants.  Id.  The Town reads this phrase as a catch-all final category that stands on its own.  Thus, the Town argues that "structures, roads, and utilities" can never be built on "steep slopes greater than 25%."  Id.  Under the Town's interpretation, we would have no choice but to deny Applicant's subdivision proposal, since Applicant plans to place at least some structures or roads on slopes that currently have a grade that is more than 25%.  Applicant, on the other hand, reads the reference to harmfulness as a phrase that modifies everything that precedes it.  Thus, Applicant interprets § 6.1.1 as only prohibiting development that would occur on "steep slopes greater than 25%" in a way that "will reasonably be harmful to the safety, health, and general welfare" of the area or its inhabitants.  Id. (emphasis added).  Under Applicant's interpretation, summary judgment for the Town would be inappropriate because it would foreclose Applicant's right to show at trial that the steep slopes development that is proposed here would not be harmful.

The Court finds both interpretations reasonable.  In such instances, we are directed to resolve any uncertainty in a zoning regulation in favor of the property owner.  In re Weeks, 167 Vt. 551, 555 (1998).  We therefore adopt Applicant's interpretation that Regulations § 6.1.1 only prohibits development that would occur on "steep slopes greater than 25%" in a way that "will reasonably be harmful to the safety, health, and general welfare" of the area or its inhabitants.  Id.

While it is certainly within a municipality's authority to prohibit all development on slopes with a grade of more than 25%, the municipality must do so with explicit, unambiguous language.  See In re John J. Flynn Estate & Keystone Dev. Corp., #4C0790-2-EB, Findings of Fact, Conclusions of Law, & Order, slip op. at 28 (Vt. Envtl. Bd. May 4, 2004) (noting that a provision must be "sufficiently clear to guide the conduct of an average person, using common sense and understanding").  The language used here in Regulations § 6.1.1 is not clear enough to give reasonable notice of an absolute prohibition on all development on slopes with a grade of more than 25%.  See In re John J. Flynn, #4C0790-2-EB, slip op. at 28.

We come to a similar conclusion with regard to Regulations § 7.9.7, which notes that "steep slopes of 25% grade or greater are unsuitable [for] development."  If this language stood on its own, it might be read to create an absolute prohibition on developing these types of steep slopes.  But the preceding sentence notes that "[c]onsideration" must be given to these types of steep slopes issues.  Regulations § 7.9.7.  The use of a word like "consideration" implies that the

5

reviewing panel (be it the Planning Commission in the first instance or this Court on appeal) must take these issues into account, but in the end has discretion to allow or prohibit development on steep slopes. We therefore conclude that Regulations § 7.9.7 is not clear enough to create an absolute prohibition on all development on slopes with a grade of more than 25%. See In re John J. Flynn, #4C0790-2-EB, slip op. at 28.

For these reasons, we **DENY** the Town's request for summary judgment on whether Regulations §§ 6.1.1 and 7.9.7 provide an absolute prohibition against the development on steep slopes with a grade of more than 25%.[2] We do not read these provisions as an absolute bar against development on steep slopes in all circumstances; if the Town had wished to create such a prohibition, it could have used more explicit language. We therefore conclude that a trial is needed to determine whether Applicant's proposed subdivision complies with Regulations §§ 6.1.1 and 7.9.7.

That said, although we do not read Regulations §§ 6.1.1 and 7.9.7 as creating an absolute prohibition against projects such as Applicant's proposed subdivision, we do read these provisions as a strong caution against allowing development on steep slopes with a grade of more than 25%. As we stated in another case, although these types of provisions might not be an absolute bar against development of steep slopes, "[t]o the extent that both [provisions] are consistent in discouraging development on steep slopes, this Court is aware that [the applicant] has assumed a tremendous burden of proof at trial." In re Rivers Dev., LLC Appeals, Nos. 7-1-05 Vtec, 68-3-07 Vtec, 183-8-07 Vtec, 248-11-07 Vtec, & 157-7-08 Vtec, slip op. at 6 (Vt. Envtl. Ct. Nov. 21, 2008) (Durkin, J.).

## IV.    Whether Applicant Can Make Use of the Waiver Provision in Regulations § 8.4

The final issue we must address is whether Applicant can make use of the waiver provision in Regulations § 8.4, in the event that a waiver is needed to allow the proposed subdivision to conform to the Regulations. This is a difficult issue, and it calls for a close reading of the Regulations.

The application that is before the Court is for a 3-lot subdivision, which (assuming it meets certain other conditions) is automatically considered a minor subdivision under the

---

[2]    Our decision to deny summary judgment here is also appropriate because we do not currently have enough information to make a decision on this issue. In particular, although the Town has submitted a complete copy of its Subdivision Regulations, the Town has not provided the Court with its other zoning bylaws or a town plan. Those documents would be helpful in determining how to interpret Regulations §§ 6.1.1 and 7.9.7.

Regulations. See Regulations § 10.0 (defining "Minor Subdivision"). Although a minor subdivision is in some respects treated differently than a major subdivision, the application process ultimately requires all applicants to conform to certain submission requirements: "The Final Subdivision Plat for a minor subdivision <u>shall meet all submission requirements</u> for a preliminary plat for major subdivisions as set forth in Section 5.1 of these regulations." Regulations § 5.2 (emphasis added).

Regulations § 5.1 explicitly states that a subdivision proposal shall be accompanied by a number of supporting materials, including a "List of waivers, if any, the subdivider desires from the requirements of these regulations." Regulations § 5.1(18). This requirement places a burden upon applicants to give notice whenever a proposed subdivision might need a waiver to comply with the Regulations. It is well within the municipality's powers to impose such a requirement to ensure that the Planning Commission (or this Court on appeal) is aware from the beginning that a waiver has been requested. This notice requirement provides for more efficient proceedings from the beginning, by making clear exactly what an applicant is requesting.

It is undisputed that Applicant's proposed subdivision application does not list any waivers as having been requested. Although Applicant claims that a waiver request was implied, Regulations § 5.1(18) unambiguously requires that such requests be made explicitly by providing a "[l]ist" of requested waivers. Indeed, this appeal is a testament to why it is important to abide by the requirement that waiver requests be explicitly listed; because no such list was provided in Applicant's subdivision application, the Planning Commission never actually addressed the issue of waivers. (See Manka Aff. at ¶ 16; see also Town of Westford Planning Commission, Findings of Fact, Conclusions, & Order (Sept. 17, 2008).)

In such circumstances, we conclude that we cannot address whether the application that is the subject of this appeal is entitled to any waivers. This Court may allow certain changes to an application to occur while that application is before the Court, even though the municipal panel below never addressed those issues. <u>In re Sisters & Bros. Inv. Group</u>, 2009 VT 58, ¶¶ 19–21 (holding that an applicant's submission to the Environmental Court of a revised site plan does not necessitate a remand to the town). However, "truly substantial changes to the form or type of an application do require remand." <u>Id</u>. at ¶ 21 (citing <u>In re Torres</u>, 154 Vt. 233, 236 (1990)). In this particular case, we view a request for waivers as a truly substantial change to the application—a change that must be addressed by the Planning Commission in the first instance.

7

We therefore **GRANT** partial summary judgment to the Town on this legal issue and conclude that a request for waivers is not properly before the Court.

### Conclusion

For all the reasons explained above, we **GRANT** partial summary judgment to the Town and conclude that the Regulations treat naturally occurring and manmade steep slopes equally, that Regulations § 7.9.7 is applicable to Applicant's proposed subdivision, and that a request for regulatory waivers is not properly before the Court.

We **DENY** the Town's request for summary judgment on whether Regulations §§ 6.1.1 and 7.9.7 provide an absolute prohibition against the development of steep slopes with a grade of more than 25%. We conclude that a trial is needed to determine whether Applicant's proposed subdivision meets the requirements of Regulations §§ 6.1.1 and 7.9.7.

This matter is currently scheduled for a hearing on September 15, 2009, at the Chittenden District Court, and we plan to proceed as scheduled. That said, given our ruling that the current application that is before the Court does not properly place the issue of waiver before us, we direct that Applicant advise the Town and the Court by **Monday, August 31, 2009** if it wishes to have the opportunity to first file a list of requested waivers with the Planning Commission.

Done at Berlin, Vermont, this 13th day of August 2009.

_____
Thomas S. Durkin, Environmental Judge

8