STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION
Vermont Unit                                          Docket No. 152-11-13 Vtec

Sligar & Sattelberger Permit Amendment          JUDGMENT ORDER

On October 14, 2014 the Court held a site visit at the subject property, 16 Mountain Avenue in the Village of Woodstock, Vermont, and a subsequent full-day merits hearing in this matter at the Vermont Superior Court, Civil Division Courthouse in Woodstock, Vermont. Appellants James Sligar and Diana Sattelberger ("Applicants") were present at the site visit and trial and were represented by Christopher Roy, Esq. The Village of Woodstock was represented by Todd Steadman, Esq.

After all parties had a full opportunity to present evidence, the Court took a brief recess to review the evidence, conduct legal research, and deliberate. The Court thereafter reconvened the hearing and announced its Findings of Fact, Conclusions of Law, and Order. This Judgment Order is provided as a summary of those Findings and Conclusions and to satisfy the Court's obligation under Vermont Rule of Civil Procedure 58; to the extent the reader wishes to review the Court's Findings and Conclusions, the reader is referred to the audio record of the October 14, 2014 hearing.

**Summary of Findings of Fact**

1.      Applicants own property located at 16 Mountain Avenue in the Village of Woodstock, Vermont ("the House"). Mountain Avenue is a through-street in the residential Village Design Review Overlay District that intersects with Vermont Route 4 and River Street. The House was originally constructed between 1897 and 1902.

2.      Applicants purchased the House intending to renovate and restore it with the hope of preserving its historical integrity.

3.      Applicants filed a zoning permit application for exterior renovations of the House on May 6, 2011. Plans submitted in support of the application included exterior shutters framing

each window.  The permit was granted on June 2, 2011.  The permit was not conditioned on the inclusion of shutters.

4.      Applicants sought to amend that permit in July, 2012 to allow for the replacement of an existing fence and the construction of a fence around new mechanical units.  Plans submitted in support of the amendment again depicted window shutters.  The permit amendment was granted on July 11, 2012 and was not conditioned on the inclusion of shutters.

5.      Neither shutters nor their significance was mentioned or discussed in either the 2011 or 2012 proceedings.[1]

6.      At the conclusion of the renovations, Applicants, with the assistance of their architect, determined that the House presents itself better, both aesthetically and for historical perspective, without shutters.  Applicants again sought to amend the permit, requesting approval to eliminate shutters as shown in prior submissions.  The permit amendment was granted in part, authorizing the elimination of shutters on the rear of the House but requiring shutters on the anterior façades.

7.      The vast majority (>85%) of homes in the Mountain Avenue neighborhood have exterior shutters framing windows on their anterior façades.

8.      The House, as renovated, retains its historical significance and the absence of shutters is not of such significance as to render it a "non-contributing" historic structure.[2]

## Summary of Conclusions of Law

Zoning regulators are allowed—encouraged, even—to use zoning regulations to preserve our historical districts and structures.  In doing so, however, they must provide adequate notice in the regulations so that property owners and their neighbors are provided with some understanding of what they can and cannot do to their property.  This is because

---

[1] Because neither the 2011 permit nor the 2012 amendments made specific reference to shutters, there is no basis for a claim that the successive application doctrine applies in this case.  See In Re Armitage, 2006 VT 113, ¶ 4, 181 Vt. 241.

[2] Based on testimony by Thomas Keefe, an architect specializing in historic preservation, the Court understands the terms "contributing structure" to mean a building contributing to the historic significance of a district and a "non-contributing structure" to mean one that does not add to the district's sense of time and place and historical development; or one where the location, design, setting, materials, workmanship, feeling, and association have been so altered or have so deteriorated that the overall historical integrity of the building has been irretrievably lost.

land use regulations have been held to be a derogation of private property rights and therefore must be strictly construed, with any uncertainty decided in favor of the landowner.  See In re Weeks, 167 Vt. 551, 555 (1998) (citing In re Vitale, 151 Vt. 580, 584 (1989)); Secretary v. Handy Family Enters., 163 Vt. 476, 481–82 (1995) ("[O]ur zoning decisions . . . have emphasized that ambiguity must be resolved for the property owner.").

Here, the Village of Woodstock ("Village") firmly believes that it has provided sufficiently clear regulatory language in its Design Review provisions.  The Court believes them to be sincere.  However, the Court itself finds a clear message in those provisions, specifically § 405(A), (F), and (G), and concludes that the following language from § 405(A) supports the permissibility of aesthetic changes:

> "Change is and should be a part of the community.  Sympathetic new design can be a positive contribution to the character of a district.  Historical, architectural and visual integrity can be maintained while present and future needs are met.  To acknowledge both growth and character, existing buildings and their sites should be recognized as products of their own time."  Village Zoning Regulations § 405(A).

We also conclude that the following language from § 405(F) does not mandate the replication or existence of any specific architectural details otherwise present within the zoning district:

> "It is not intended to insist that new construction or alterations should copy either existing architectural styles or existing decorative details."  Id. at § 405(F).

Finally, we find that the following language from § 405(G) mandates consideration of certain design elements, but not their inclusion:

> "Architectural features, including but not limited to: cornices, windows, shutters, fanlights, and entablatures, prevailing in the immediate area, shall be considered in the construction or alteration of a building.  It is not intended that the details of old buildings be duplicated precisely, but they should be regarded as suggestive of the extent, nature and scale of details that would be appropriate on new buildings or alterations."  Id. § 405(G)(6).

While these provisions mandate the consideration of certain architectural features, they do not on their own mandate the inclusion of those features.  In fact, the language suggests that there are options other than requiring the elements: acknowledging "both growth and character," explicitly excusing copying existing architectural details, and offering "prevailing"

3

architectural features as a point of reference rather than an absolute requirement. This language makes variation within the Village Design Review Overlay District permissible.

Therefore, in response to Applicants' first Question, the Court concludes that the application to amend the permit to allow for the exclusion of shutters is **GRANTED**. In response to Applicants' second Question, the Court concludes that § 405(G) of the Village Zoning Regulations provides sufficiently clear standards, and specifically that directs the architectural features listed in § 405(G) must be considered, but are not mandated. Finally, the Court concludes that the above mentioned responses render Applicants' third Question regarding the propriety of requiring shutters despite the absence of shutters on other homes in the immediate neighborhood to be moot.

Electronically signed on October 20, 2014 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division