STATE OF VERMONT

| SUPERIOR COURT<br>Environmental Division Unit | ENVIRONMENTAL DIVISION<br>Docket No. 173-12-13 Vtec |
|---|---|
| Killington Resort Pkg. Project<br>Act 250 Permit Application | DECISION ON MOTION |

The pending matter is an appeal of an Act 250 permit granted by the District #1 Environmental Commission for the reconfiguration of some of the various parking facilities at the Killington Ski Resort in the Town of Killington. The trial of this de novo appeal has been completed, and the matter is awaiting the Court's issuance of a merits decision.

On November 4, 2015, Killington/Pico Ski Partners, LLC ("Applicant") filed a motion asking this Court to accept into evidence substituted plans for a portion of its proposed day skier parking project. See Applicant's Motion to Substitute Plan Exhibits, Implement Other Project Changes, and to Withdraw the Opposition of Pinnacle Condominium Association, Inc. at 4, filed Nov. 4, 2015 ("Nov. 4 Memorandum"). By Entry Order filed on December 11, 2015, this Court granted the motion in part and afforded all other parties 30 days to advise if they wished to cross-examine the sponsoring witnesses or present rebuttal witnesses prior to the Court deciding whether to accept the revised plans. Appellants[1] and the Vermont Natural Resources Board ("NRB"), two of the four principal parties in this case, filed the following responses.

Appellants requested that the Court direct Applicant to "provide a narrative explanation to describe the full extent of the changes and to clarify whether the changes to the layout of Road H resolve the site [sic] distance deficiencies identified at trial by the Durkee Parties' expert." Appellants' Response to Court's Order at 1, filed on Jan. 19, 2016. Appellants did not object to the Court receiving Applicant's revised plans, but asked the Court to reserve its decision on whether a further evidentiary hearing was necessary until after Applicant had presented the requested explanation of the plan revisions.

---

[1] We refer to the five Appellants in this case—Stephen Durkee; Mountainside Properties, Inc.; Mountainside Development, Inc.; Fireside Properties, LLC; and Killington Village Prop., Inc.,—collectively as "Appellants."

The NRB also responded to the Court's directive, representing that it had no objection to the Court accepting the revised plans into evidence without a further evidentiary hearing. However, the NRB requested that the Court remand the pending application to the District #1 Environmental Commission ("District Commission") so that the District Commission could consider the revised plans. The NRB suggested that the Court "rule [on the merits] with respect to the entirety of the two" pending appeals, but also remand "the very narrow issue regarding the newly proposed 'Road H' and related changes." NRB Memorandum in Response to Court Order of Dec. 11, 2015, at 5, filed Jan. 19, 2016.[2]

In reply to both responses, Applicant filed a memorandum that clarifies the limited nature of the changes to the project proposed by its settlement agreement with the other principal party—Pinnacle Condominium Association, Inc. ("Pinnacle")—and objects to NRB's suggestion that the pending application be remanded. In response to the explanation of the changes proposed by its revised plans, Applicant notified the Court, by way of Attorney Stern's correspondence dated January 12, 2016 (filed with the Court on January 25, 2016) that Appellants no longer saw the need for a further evidentiary hearing.

We summarize here, with some reference to the original plans, Applicant's representations as to the total revisions to the site plans that resulted from its settlement with Pinnacle:

1. No changes are proposed to the layout or location of the proposed parking areas, Lots C through J, or to the intersection of those parking area accesses with Killington Road, the main access road to the Resort.

2. The only revision concerns a proposed new internal private road, known as Road H, which will be located just above (south of) the Pinnacle development.

3. The strip of land identified as the location for Road H and related improvements will remain in the same location and at the same width as proposed at trial. Previously, a sidewalk was to be located above (south of) Road H, within this designated area. The revised plans call for the sidewalk and Road H to essentially swap locations, so that the

<hr>

[2] We are left to wonder how this could be accomplished, given that Applicant submitted the revised Road H plans on the condition that those plans were actually accepted by the Court. See Nov. 4 Memorandum at 4.

sidewalk will be located adjacent to the Pinnacle development and Road H will be located south of the sidewalk. The area for the Road H improvements will not change and will not be expanded.

4. The specific modifications, all within the originally designated area for the Road H improvements, are detailed on a revised site map identified as Road H Exhibit Alt. 3, a copy of which was attached to Applicant's Nov. 4 Memorandum as Exhibit A. A comparison of this alternate exhibit to the trial exhibit (Exhibit B, sheet C-2.03) reveals little difference. We understand that the totality of these minor changes include:

    a. additional tree planting and landscaping to screen Road H and the adjoining sidewalk from the Pinnacle development residences;[3]

    b. realignment of a stop sign at the intersection of Road H and Old Mill Road;

    c. an additional sign advising Road H travelers who wish to turn left (north) onto Old Mill Road that there is "No Outlet" when travelling in that direction, since the road ends at the sewer treatment plant; and

    d. a realignment of the Road H grade where it intersects with the accesses to Lot D and the existing Mountain Inn parking area.[4]

5. Applicant also provided deeds for the easements it intends to grant to Pinnacle, so as to resolve an assertion by Pinnacle that the proposed parking lot development would interfere with easements held by Pinnacle. Applicant also assured Pinnacle that it would pave the portion of Old Mill Road (now dirt) that travels north of the Pinnacle development if that portion of the road is ever used as access for the lower proposed parking lots (Lots I and J).[5] Applicant has also clarified that it will be solely responsible for the maintenance and repair of Road H, that Pinnacle will have no such responsibility,

---

[3] See Modified Landscaping Plan, a copy of which was attached as Exhibit B to Applicant's Jan. 20, 2016 Memorandum.

[4] No changes have been proposed to the location, orientation, or alignment of this intersection. The grading for Road H will merely need to be raised by three feet, so as to accommodate the swapping of the Road H and sidewalk locations. Road H will now be at a slightly higher elevation because the area slopes upward from north to south.

[5] Using this portion of Old Mill Road as access for Lots I and J is not proposed in the pending application. In fact, the pending site plans depict bollards that will restrict the public's access to Old Mill Road from these lower parking lots. See Ex. B, sheet 2.04, admitted during the first day of the merits hearing (October 29, 2014).

and that Applicant will continue its maintenance and repair responsibilities for the portion of Old Mill Road south of the Pinnacle development.

**Discussion**

I.      Substituted Plans Are Admitted Without Further Evidentiary Hearing.

Based upon Applicant's representations about the minor revisions to its site plan that were the result of its settlement agreement with Pinnacle, Appellants have confirmed that they no longer see the need for a further evidentiary hearing and do not object to the receipt of Applicant's revised site plans into evidence. Appellants only expressed the caveat that they continue to have concerns and objections "related to sight distance deficiencies at the Road H/Killington Road intersection." Id. Because no changes to this proposed intersection have been made in connection with Applicant's settlement agreement with Pinnacle, we see no reason this concern should limit the admission of Applicant's revised plans.

The NRB represents in its Jan. 19, 2016 Memorandum that it does not object to the admission of Applicant's revised plans and recommends that the Court complete its merits decisions, but also requests that the Court remand the application to the District Commission, so that it may consider the Road H revisions.

We therefore have consensus from all parties that there is no objection to the Court receiving into evidence, without a further evidentiary hearing, the revised Road H plans. Applicant's revised site plans and revised easement deed, offered for post-trial admission as Exhibits A, B, and C, are therefore **ADMITTED**, and the Court will consider such plans as it completes its research and drafting of a merits decision.

II.     Remand Is Not Warranted.

We now turn to NRB's request, which is somewhat unclear (as explained above in footnote 2), to complete our merits decision, but also remand "the very narrow issue regarding the newly proposed 'Road H' and related changes." NRB Memorandum at 5, filed Jan. 19, 2016.

Both the NRB and Applicant point the Court to several recent Vermont Supreme Court decisions that speak to when this Court should remand a pending application.

Ours is a court of limited appellate jurisdiction, and thus we will not consider wholly new applications until the tribunal below has fulfilled its important responsibility of hearing

new applications in the first instance. See In re Torres, 154 Vt. 233, 236 (1990) (noting that remand by the trial court is required when a permit application changes from a permitted use to a conditional use application). The Supreme Court has cautioned, however, that reading the remand doctrine too broadly will cause land use litigation to "become a procedural ping-pong match: any change would result in a remand . . . , followed by another appeal to the Environmental Court." In re Sisters and Bros. Inv. Grp., LLP, 2009 VT 58, ¶ 21, 186 Vt. 103. Thus, the Supreme Court has narrowed the remand directive, making clear that only "truly substantial changes to the form or type of an application" require remand. Id. The Court later clarified that "truly substantial" changes include those made "in the nature of the permit requested, alter the location of the project, or increase the scope of the project." In re Chaves Act 250 Permit Reconsideration, 2014 VT 5, ¶ 14, 195 Vt. 467.

One of the ironies of remand requests is that they are often made after an applicant has agreed to changes in a site plan, in an effort to minimize the impacts upon neighbors. The Supreme Court acknowledged that the changes made by the applicant in Chaves evidenced such an effort, and noted that "Applicants are encouraged to resolve differences with interested parties by amending a project to respond to issues, and it would be extremely inefficient if each concession required a remand to the district commission." Id. ¶ 16.

More recently, the Court has determined that remand was not warranted when an applicant made changes to its parking plan, since there were no changes made to the location of the parking area, nor was the type of permit applied for revised. In re All Metals Recycling, Inc., 2014 VT 101, ¶¶ 19–20, 197 Vt. 481. There, the Court recited the principal that "[b]ecause the environmental court's review is 'limited to consideration of the matters properly warned as before the local board,' . . . 'truly substantial changes to the form or type of an application do require remand.'" Id. ¶ 19 (quoting In re Maple Tree Place, 156 Vt. 494, 500 (1991); In re Sisters & Bros. Inv. Grp., LLP, 2009 VT 58, ¶ 21, 186 Vt. 103). The All Metals Court found that remand was not warranted because there was no attempt to materially alter the proposal or change the type of permit applied for, characterizing the changes to applicant's site plan as "differ[ing] little from the [original], except to superimpose lines denoting specific parking spaces, and labeling the number of available spots." Id. ¶ 20.

Most recently, the Supreme Court noted that where an applicant changed the access road for a gravel pit to the opposite side of a project area so that the change could possibly impact neighbors who might not have received notice, the changes to the project were so substantial as to require remand. In re Application of Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 107. In directing remand to the applicable District Environmental Commission, the Court noted that there was no evidence in the record "that the access point was changed to address substantial criticism of the [original access road] proposal, and the revisions clearly are more substantial than those discussed in Chaves and All Metals Recycling." Id. The Lathrop Court emphasized that when a project amendment may have substantial Act 250 impacts that were not reviewed below, and when those impacts affect new parties who did not necessarily receive notice of the original Act 250 proceeding, the application may be especially likely to require remand. Id. at ¶ 107.

Looking to the changes proposed by Applicant here, we conclude that the proposed changes are minor in nature and are more in line with the changes proposed in All Metals Recycling than in Lathrop. The changes proposed here were agreed to by Applicant to address concerns expressed by Pinnacle. In fact, the concept of swapping the location of Road H and the adjoining sidewalk was proposed by Pinnacle and discussed at trial. We therefore view these circumstances as more in line with the settlement revisions in Chaves, although even less substantial than the changes proposed there, and thus find remand is not warranted here.

When we look to these broader legal concepts of when a remand is warranted, we conclude that there is no justification for the remand that the NRB requests. In Lathrop, the Court reiterated these standards and elaborated further upon them by emphasizing that an application must revisit its review before the district commission when "a project has changed from the project that has been [originally] noticed to the extent that such change may have a significant adverse impact under any of the criteria or may affect any [additional] person under any criteria." Lathrop, 2015 VT 49, ¶ 103 (quoting Act 250 Rule 10(H)).

The changes to Killington's proposed plans are limited to a minor portion of the project: Road H, the adjoining sidewalk, and some landscaping to mitigate the aesthetic impacts upon the neighboring Pinnacle development. The location of the proposed parking areas and even

-6-

the area for Road H and its related improvements has not changed.  No party has suggested that the project changes will result in an increase in the manner of use or traffic on Road H.  No additional Act 250 criteria need to be considered because of these changes, and the impacts under the criteria considered at trial will remain unchanged.  The changes have been proposed pursuant to an agreement with Pinnacle, which represents the abutting neighbors who may be most directly affected by the development of Road H.  Lastly, no party has identified specific abutters or others who may be impacted by the project or the proposed changes who did not receive notice in the course of the original District Commission proceeding.[6]

The NRB suggests that we both complete our merits decision and remand to the District Commission the "the very narrow issue regarding the newly proposed 'Road H' and related changes."  NRB Memorandum at 5, filed Jan. 19, 2015.  Respectfully, we expect that the NRB suggestion, if followed, would only result in a procedural mosh pit that would bring about unnecessary delay and confusion, without any perceivable justification.

For all these reasons, we decline to follow the NRB's suggestion to remand the Road H changes to the District Commission for consideration.

## Conclusion

Based upon these legal conclusions, we **GRANT** Applicant's motion, and we **ADMIT** Applicant's revised plans without a further evidentiary hearing.  We also **DENY** the NRB's request to remand the amended application to the District Commission.  Lastly, we remove the stay of our consideration of the evidence and legal arguments presented at trial and will proceed with our research, deliberation and drafting of the merits decisions in this appeal and the related Killington Village Master Plan Act 250 Application, No. 147-10-13 Vtec.  Our review,

---

[6]  The NRB suggests that "there appears to be a [sic] least one entity, which abuts the proposed changes that is not currently a party to this matter potentially raising 'notice' issues."  NRB Memorandum at 3, filed on Jan. 19, 2015.  The NRB does not identify this entity, but the circumstances lead us to conclude that the NRB is referring to the owners of The Mountain Inn, which operates on lands immediately above (south of) the Road H improvements.  We are not aware of any other abutter to that area of the project.  However, Applicant confirmed that The Mountain Inn owners were provided with notice of the District Commission proceeding and chose not to participate.  See Applicant's Reply Memorandum at 3 n. 1, filed on Jan. 22, 2015.  The NRB misplaces its focus on this legal concept: we are not directed to rely upon whether a neighbor, potentially affected by a project change, has chosen to become a party, but rather only whether that neighbor was provided with notice of the District Commission's consideration of the proposed project.

deliberation and drafting of these merits decisions will include an assessment of the conformance with the applicable Act 250 criteria of all project plans, including the revised plans accepted into evidence by this Decision.

Electronically signed on January 28, 2015 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).



_____

Thomas S. Durkin, Judge

Environmental Division


<u>Notifications</u>:

Nathan H. Stearns (ERN 3585) and C. Daniel Hershenson (ERN 3586), Attorneys for Appellants Stephen Durkee, Mountainside Properties, Inc., Mountainside Development, Inc., Fireside Properties, LLC, and Killington Village Prop., Inc.

Christopher D. Roy (ERN 1352), Attorney for Applicant Killington/Pico Ski Resort Partners, LLC

Jon S. Readnour (ERN 2166), Attorney for Interested Person Pinnacle Condo. Association, Inc.

Gregory J. Boulbol (ERN 1712), Attorney for the Vermont Natural Resources Board

Elizabeth Lord (ERN 4256), Attorney for the Vermont Agency of Natural Resources