## STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Environmental Division Unit | ENVIRONMENTAL DIVISION<br>Docket No. 83-7-15 Vtec |
| 27 Fletcher Place Change of Use | DECISION ON THE MERITS |

The owner of property located at 27 Fletcher Place in the City of Burlington seek the authority to renovate and expand a single-family home into a duplex, with expanded parking and site renovations. The City of Burlington Zoning Administrator ("Administrator") issued a zoning permit for the work initially proposed. Neighbors Robert and Susan Butani ("Neighbors") had concerns about the proposed renovation and site work, so they appealed the Administrator's determination to the City of Burlington Development Review Board ("DRB"). When the DRB denied the Neighbors' appeal and granted approval, with additional conditions, the Neighbors filed a timely appeal to this Court.

The property owner, Colchester Avenue Housing, LLC ("Applicant"), is represented by Franklin L. Kochman, Esq. The Neighbors are represented by Lisa B. Shelkrot, Esq. The City of Burlington ("City") is represented by Kimberlee J. Sturtevant, Esq.

The parties initially sought to resolve their differences through negotiation. Those efforts delayed the parties' preparation for trial, and the Court issued an Amended Scheduling Order on June 8, 2016, in an effort to move the action to trial. The parties completed their trial preparations, while also continuing their efforts at a voluntary resolution. While those settlement efforts ultimately did not bear fruit, the Court appreciates the parties' efforts.

The Court conducted a site visit and a one-day trial at the Costello Courthouse in Burlington, Vermont on January 31, 2017. At the end of the trial, the parties requested and the Court granted additional time to file post-trial briefs. This matter thereafter came under advisement on April 5, 2017. Other responsibilities delayed the Court's research, drafting and issuance of this Merits Decision, for which the undersigned offers his apologies to the parties.

-1-

Based upon the evidence admitted at trial, including that which was put into context by the site visit, we do hereby issue the following Findings of Fact, Conclusions of Law, and Judgment Order that accompanies this Merits Decision.

**Findings of Fact**

1. The property at 27 Fletcher Place ("Property") is currently owned by Colchester Avenue Housing, LLC. Francis J. von Turkovich, Applicant's sole member, provided much of the trial testimony in support of the pending change of use application.

2. The Property is improved with a single-family residence built circa 1940s. The property is located in the Institutional Zoning District ("I-District") and the Shared Use Parking District.

3. Fletcher Place is a short side street to the north of Colchester Avenue, in the vicinity of a portion of the UVM Medical Center. The buildings along Fletcher Place are mostly used as single-family residences, although there may be some duplexes on this road. The homes are mostly located on small lots, with the homes close together and usually only separated by a driveway on the side of each home.

4. The Property once contained one acre, more or less. Like the homes surrounding it, the home on the Property is located close to the roadway, with minimum front and side yard setbacks. The driveway that serves the Property is on the north side of the home, parallel to the home.

5. The existing driveway is essentially next to the northern boundary shared with Neighbors, with no setback from this side yard. Since the current zoning regulations require driveways in this zoning district to respect a minimum five-foot setback, the existing single-family home does not conform to the current zoning regulations.

6. Most of the open lands on the Property are located behind the home and remain undeveloped. There were once plans to develop these open lands with a three-story, 79-unit apartment complex, with underground parking, but those plans were abandoned after an initial sketch plan was presented to City officials. A copy of the 79-unit apartment complex sketch plan was admitted at trial as Exhibit 7.

7. In regards to the proposed duplex change of use, Applicant first presented a site plan to the Administrator and the DRB that was included with the original change of use application. See

Exhibit A, page 4. That site plan depicted a proposal to develop a four-car parking area in the middle of the remaining open lands, with an alternate access to the parking area from Colchester Avenue. Id.

8. Prior to trial, Applicant revised its site plan. A copy of the revised site plan was admitted at trial as Exhibit B. Neighbors objected to the Court allowing Applicant to present this alternate site plan and filed a motion in limine prior to trial. At trial, the Court determined that the revised site plan should be admitted, as it evidenced an effort by Applicant to make revisions to the proposed site plan to address the Neighbors' concerns, under the precedent of In re Sisters and Brothers Investment Group, 2009 VT 58, ¶ 21, 186 Vt. 103 ("If applicants were barred from presenting minor revisions to the Environmental Court in response to concerns expressed by interested parties, site-plan review would become a procedural ping-pong match . . . .").

9. The revised site plan shows a revised lot, consisting of 0.22± acres,[1] on which the existing home and proposed parking area will be located. The plan calls for the existing driveway for 27 Fletcher Place to be extended past the rear of the home; the four proposed parking spaces will be located behind the home. An open area will remain behind the adjoining home (31 Fletcher Place) and will be landscaped with trees and shrubs for screening. The existing driveway where up to two cars are now parked for the existing single-family home at 27 Fletcher Place will be used as a pass-through to the proposed parking area. No parking will be allowed on the existing driveway, so that cars may pass through to the proposed parking area.

10. The revised site plan also does away with the secondary access from Colchester Avenue that was proposed in the original site plan. Therefore, the proposed access to the revised parking plan will not provide an opportunity for others to use the proposed parking area as a shortcut or pass through to Colchester Avenue or the adjacent UVM Trinity Campus.

11. The proposed parking area will be paved, with painted lines marking the four parking places. New shrubs will also be planted on the rear (western) boundary of the parking area, so as to provide additional screening.

---

[1] The 0.22± acre parcel was created through a subdivision application that was approved and not appealed in a separate permit proceeding.

12.     The parking area and undeveloped portion of the 0.22± acre lot will be regraded, so as to encourage surface and storm water to flow away from the homes at 27 and 31 Fletcher Place.

13.     Both the Administrator and DRB imposed conditions on their approval of Applicant's change of use application; some conditions were specific to the concerns raised about this project and others were of a standard variety the City seeks to impose on all approved developments. At trial, the City asked whether the Applicant would object to the Court imposing the specific and standard conditions listed on the City's Exhibit 4. Neither the Applicant nor the Neighbors objected to the Court imposing these conditions on any approval.

14.     One of the conditions proposed by the City is that the renovations and change of use to the existing building must comply with the Vermont Residential Building Energy Standards ("VRBES"). Applicant confirmed that its proposed renovations and change of use to a duplex conform to VRBES and agreed that it will secure a VRBES certification and record the same in the City of Burlington Land Records prior to receiving a Certificate of Occupancy.

15.     Converting the existing single-family home to a duplex will entail work on the interior of the building only. The footprint of the home will not change; the only change noticeable from outside of the home will be that two second-story windows will be replaced with an upgrade, so that it may be used as a secondary safety access/egress from the second-floor apartment.

16.     There are no wetlands on or adjacent to the 0.22± acre parcel.

17.     The existing single-family home and driveway cover 20.2% of the 0.22± acre parcel. Since the conversion of the dwelling to a duplex will not cause an increase in any dimensions of the building, that conversion will not affect the lot coverage. Once the added parking area is paved, the total development will cover 36.2% of the 0.22± acre parcel.

18.     While the proposed change of use will double the number of residences on this property, the increased use will cause minimal impacts upon neighboring properties. In fact, the proposed use is similar to several other area properties. Additional one-way vehicle trips are not likely to increase traffic by more than a couple of trips per day.

## Conclusions of Law

Development within the City, including renovations that constitute changes of use (such as the application before us), are required to show conformance with the applicable provisions

of the City of Burlington Comprehensive Development Ordinance ("CDO"). We do not embark upon a review of all applicable CDO provisions, however, since our review in this de novo appeal is limited to the legal issues presented by the Neighbors' Statement of Questions. V.R.E.C.P. 5(f) and 10 V.S.A. § 8504(h). With this directive in mind, we look to the "Notice of Issues" filed by the Neighbors for a listing of the legal issues we are directed to address in this appeal.

The Notice of Issues contains fifteen Questions. Our review identifies five general topics raised by the legal issues preserved for our review. We address each of the fifteen Questions in the following topic headings:

## I.     Parking Concerns

By their Question 1, Neighbors ask whether Applicant has provided "sufficient specificity" about the proposed parking plan, including the location, number of spaces and access for the parking area. Neighbors' Notice of Issues, filed August 7, 2015, at 1. This Question appears to be directed to the parking plan identified in the original site plan that was attached to the April 6, 2015 permit application that Applicant first submitted to the Zoning Administrator. We do not consider the sufficiency of the parking plan depicted on that initial site map, since Applicant presented a revised site map at trial. See Exhibit A, p. 4. At trial, we denied Neighbors' request to prohibit Applicant from submitting its revised site plan, for reasons similar to why we allowed a revised site plan to be submitted in the Sisters and Brothers appeal: the changes to the site plan were made to address concerns expressed by interested parties. Additionally, the site plan changes were not so material as to change the nature of the permit application, which would require a remand or consideration of a new application. In re Sisters and Brothers Investment Group, LLC, No. 106-5-06 Vtec, slip op. at 12 (Vt. Envtl. Ct. June 16, 2008), aff'd 2009 VT 58 ¶¶ 19–21.

Given that the revised site plan admitted at trial (Exhibit B) provided sufficient specificity of the number, location and access for the parking areas that will serve the proposed duplex, we conclude by answering Neighbors' Question 1 in the affirmative and in favor of Applicant.

By their Question 2, Neighbors ask whether "there is a pre-existing paved or gravel parking area which will provide parking for the proposed use?" While we are uncertain as to

what area this Question was intended to specifically refer, we understand that it, too, was drafted with the initial site plan in mind.

No CDO provision requires Applicant to rely upon pre-existing paved or gravel areas for their proposed development parking. In fact, Applicant's revised site plan represents improvements over the existing parking plan and that proposed in the initial site plan. The initial site plan called for parking to be located farther away from the proposed duplex and relied upon a separate access from Colchester Avenue. The revised site plan also does away with the original parking plan that caused the first car into the driveway to be blocked by the second car in, and converted the driveway to an access way to the new, paved parking area, located adjacent to the proposed duplex. The revised site plan also includes further landscaping and plantings that will provide better stormwater drainage away from the existing homes, and will provide aesthetic screening for the new parking areas.

The parking plan represented in the revised site plan represents improvements over the original plan; the new parking plan will reduce the adverse impacts upon neighboring properties.

For these reasons, we respond to Neighbors' Question 2 by noting that the parking plan reflected in the revised site plan conforms to the applicable provisions in the CDO concerning site plan review. See CDO §§ 3.4.2(a), § 6.2.2(i), and § 6.2.2(l).

By their Question 3, Neighbors ask whether "the Applicants included in the application all land development which will be necessary in order to provide parking according to the application?" The trial did not reveal the premise of this Question; we are at a loss to determine what provision of the CDO may be encompassed by this Question. For the reasons already stated, we conclude that the revised site plan details all development necessary to provide parking for the proposed duplex. We therefore render judgment as to Neighbors' Question 3 in favor of Applicant.

Neighbors' Question 4 asks a question very similar to that posed by Question 3: whether "the Applicants included in the application all land development which will be necessary in order to provide parking pursuant to the City of Burlington Zoning Ordinance?" Parking and access to it are governed by CDO §§ 6.2.2(i) and 6.2.2(l). The former provision requires that curb cuts for vehicular access "be arranged and limited in number to reduce congestion and improve traffic

safety." CDO § 6.2.2(i). Those goals are accomplished by Applicant's revised site plan, since it relies upon a single, pre-existing curb cut and eliminates the need for parked vehicles to back into Fletcher Place for ingress or egress. The latter provision encourages parking that is located "at the side or rear of the lot and screened from view from surrounding properties and adjacent public rights of way." CDO § 6.2.2(l). The revised site plan accomplishes these goals and makes improvements over the existing parking plan for the current single-family residence, which relies upon parking that is clearly visible from the Neighbors' property and Fletcher Place. For these reasons, we conclude that the revised site plan conforms to the applicable CDO provisions concerning parking. We therefore render judgment as to Neighbors' Question 4 in favor of Applicant.

Neighbors' Question 5 asks if "the application meet[s] the City's requirements for parking under the City of Burlington Zoning Ordinance?" We answer this Question in the affirmative, much for the same reasons that we answer Neighbors' Question 4 in the affirmative. In addition, we note that the revised parking plan reduces the parking spaces provided in the original site plan from six to four spaces and specifies that the four spaces on the revised site plan will be nine feet wide and twenty feet deep, and are now located immediately behind the residence. For these reasons, we conclude that the revised site plan meets the applicable CDO parking requirements. We therefore render judgment as to Neighbors' Question 5 in favor of Applicant.

Question 6 asks whether "the application require[s] an increase in lot coverage for purposes of parking?" We answer that the revised site plan does result in an increase of the total lot coverage for the 0.22± acre parcel, from 20.2% of the parcel being covered by the existing building and driveway, to 36.2% of the lot being covered by the existing building, driveway, and the proposed parking lot. However, even this increased lot coverage does not exceed the 40% maximum lot coverage allowed in the I-District. See CDO Table 4.4.4-1. We therefore conclude that the increased density caused by this proposed change of use conforms with the applicable regulations.

Question 7 asks whether "Applicants have applied for an increase in lot coverage?" We believe that this Question is misguided; we have not found a CDO provision that specifically requires an applicant to separately "apply" for a lot coverage increase. Rather, any development

requires a permit application; an application such as the one presented in this appeal (change of use, requiring site plan review), must be accompanied by a site plan showing specific details of the proposed development, including lot coverage. See CDO §§ 3.2.2(a)(3)(D) and 3.2.2(c). Therefore, we respond to Neighbors' Question 7 in the affirmative, since Applicant did submit an application with an accompanying revised site plan that notes the proposed increase in lot coverage. Since the increased lot coverage is under the maximum allowed, we render judgment as to Neighbors' Question 7 in favor of Applicant.

II.     **Permit Conditions**

Neighbors' Question 8 challenges a condition imposed by the DRB that directs the Applicant to present a revised site plan after the close of the DRB hearing but prior to the issuance of a zoning permit, that shows more details of the proposed site plan. Neighbors express a concern, which the Court finds appropriate, that the procedure developed by the DRB would deprive them of notice and an opportunity to be heard in response to these specific site plan disclosures. However, the fact that Applicants presented their revised site plan at trial, and that Neighbors were able to review and challenge that site plan before the trial was completed, renders Neighbors' Question 8 moot. We therefore **STRIKE** the condition imposed by the DRB, requiring a revised site plan to be presented after the DRB hearing, since Applicants satisfied that condition at our de novo appeal hearing.

Neighbors' Question 9 asks whether "the above-described conditions of the permit [are] otherwise proper?" The wording of this Question appears to direct our attention to the single condition challenged by Question 8. However, given that this appeal is de novo in nature, we do not review the propriety of the conditions imposed by the DRB. Rather, we render our own determination, based upon the evidence presented at trial, of what conditions (if any) should be imposed on the proposed project.

At trial, the City proposed a number of conditions, both specific to this change of use and others of a standard variety; no party objected to the conditions proposed by the City; Applicant even consented to the imposition of the City-suggested conditions. The conditions proposed by the City are itemized on City Exhibit 4. Based upon the evidence presented, we conclude that these conditions are prudent, necessary and allowed under the applicable CDO provisions. We

therefore conclude that the conditions itemized on Exhibit 4 shall be included in the approval resulting from these proceedings.[2]

## III.    Change of use of a non-conforming structure

By their Question 10, Neighbors ask whether it is permissible to expand the use of a non-conforming structure, by converting the single-family home into a duplex.  We note that while this application envisions a change of the use of the existing structure, no changes are proposed to the footprint, height, or other material characteristics of the existing structure.  In particular, no changes are proposed to the expand the existing driveway, which is what causes the existing development to not comply with the current zoning regulations.  Thus, there is no change proposed that would cause the non-complying nature of the structure to be increased.  See CDO § 5.3.5(a)(1) (allowing changes or modifications to non-complying structures which do not increase the non-conformity).

More to the point, the changes proposed here do not change the structure, but rather seek a change to the use of that structure.  Duplexes are a permitted use in the I District.  See CDO Appendix A—Use Table.  A change from one permitted use of a non-complying structure to another permitted use is allowed under our general doctrines of non-conformities.  See In re Miserocchi, 170 Vt. 320, 326 (2000) (allowing a change in the use of a non-conforming structure from one permitted use to another permitted use).

For these reasons, we conclude that the proposed change of use of the existing structure from one permitted use (single-family residence) to another permitted use (attached duplex residence) is permissible.  We therefore render judgment on Neighbors' Question 10 in Applicant's favor.

## IV.    Revised Site Plan:

Questions 11, 12, 13, and 14 raise concerns about the adequacy of Applicant's site plan, but each Question appears more focused on the site plan originally submitted to the Zoning Administrator.  We address these Questions in light of the revised site plan that Applicants submitted in this appeal.

---

[2] We include in this Merits Decision by this reference all of the specific and standard conditions itemized in Exhibit 4.

Question 11 asks whether the application provides adequate protections for the neighbors from the intensification of the proposed use and the increase in parking; Question 12 asks whether the application provides adequate protections for the neighbors from public access to their property due to off-site parking; Question 13 asks whether the proposed off-site parking will create unreasonable traffic, noise, congestion, and public intrusion by people using a cut-through from Colchester Avenue to Fletcher Place; Question 14 asks what access from the property is appropriate if off-site parking is allowed.

Applicant's revised site plan bring the proposed parking from an adjacent lot, with a secondary access to and from Colchester Avenue, to parking immediately behind the home with access over the existing driveway, on the same parcel as the home and driveway. The revised plan also provides additional screening through plantings between the proposed parking area and Neighbors' property.

The facts at trial did not reveal a material "intensification" of use as this property is changed from a single-family residence to a duplex residence. We therefore decline to adopt the premise of neighbors' Questions, which assumes off-site parking is part of the site plan. In response to Neighbors' Question 11, we conclude that this change of use, incorporating the changes envisioned by the revised site plan, provides adequate screening and protection for the Neighbors.

We answer Neighbors' Question 12 in a similar fashion. It appears that this Question arose when Applicant first proposed that its new parking area would utilize a secondary access from Colchester Avenue, thereby exposing Neighbors to others accessing their property from the rear. Applicant removed that secondary access proposal from their revised site plan; the secondary access that caused Neighbors' concern is no longer part of this proposed development.

We also respond to Neighbors' Question 13 in a similar fashion. The revised parking plan will not allow other members of the public to use a "cut-through path from Colchester Avenue" and therefore will not result in the "unreasonable traffic, noise, congestion, and public intrusion" that Neighbors feared.

Lastly, we note that the proposed parking plan, as reflected in the revised site plan, is included on the 0.22± parcel; the parking can therefore no longer be characterized as "offsite",

as was originally proposed.  Access to the revised parking area, adjacent to the existing home in the rear, will now be along the existing driveway, with parking no longer allowed in that driveway. We therefore conclude that the access now proposed is appropriate.

For all these reasons, we conclude that judgment should be entered in Applicant's favor as to Neighbors' Questions 11–14, inclusive.

## V.      VRBES Standards:

Neighbors' final Question (Question 15) asks whether the two residential dwelling units proposed by Applicant will "violate the minimum VRBES standards."  The only evidence presented at trial was that the proposed duplex units would comply with the VRBES standards. In fact, Applicant consented to a specific condition that its development must comply with the VRBES standards, and that it may not apply for or receive a Certificate of Occupancy for the duplex without first receiving a VRBES certification and recording the same in the City of Burlington Land Records.  See City Ex. 4 at 1: Specific Condition #3.  For all these reasons, we answer Neighbors' Question 15 in the negative: the proposed change of use will not violate the minimum VRBES standards.  We therefore enter judgment in Applicant's favor on this last Question presented.

### Conclusion

For all the reasons stated above, we conclude that on the legal issues preserved for our review by Neighbors' Notice of Issues, Applicant's proposed change of use for 27 Fletcher Place from a single-family residence to a duplex, if completed in accordance with the revised site plan and all other exhibits admitted at trial, and subject to all specific and standard conditions itemized on the City's Exhibit 4 (which are incorporated here by this reference), will be in accordance with the applicable provisions of the City of Burlington Comprehensive Development Ordinance.

A Judgment Order accompanies this Merits Decision.  This completes the current proceedings concerning this application appeal.

Electronically signed on August 2, 2017 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge

-11-