VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT  05401
802-951-1740
www.vermontjudiciary.org



| | |
|---|---|
| Costco LU Permit Amendment | Docket No. 20-3-20 Vtec |
| Costco Wholesale Corp. Site Plan Amendment | Docket No. 48-6-20 Vtec |
| Costco Wholesale Corp. JO Appeal | Docket No. 22-ENV-00084 |
| Costco Wholesale Administrative Decision Appeal | Docket No. 23-ENV-00004 |

## Decision on the Merits

For nearly two decades, this Court has managed the ongoing litigation relating to Costco Wholesale Corporation's ("Costco") plan to add gasoline sales and an expansion of its retail facilities to its operations at 218 Lower Mountain View Drive in Colchester, Vermont.  During this time, two commercial neighbors—R.L. Vallee, Inc. ("Vallee") and Timberlake Associates, LLB ("Timberlake")—have appealed or cross-appealed each of the local and state permit determinations relating to Costco's gas station operations.  At issue in these coordinated proceedings is what hours Costco is entitled to operate its gas station and whether it may operate full-time without obtaining further permit amendments.

In two separate entry orders published on August 31, 2021 and September 2, 2021, this Court answered several Questions in Docket Nos. 20-3-20 Vtec and 48-6-20 Vtec, respectively.  The Court also resolved all outstanding issues in Docket No. 104-8-12 Vtec.  The Court later conducted a two-day merits hearing in November 2023 for the remaining Questions, as well as those raised in Docket Nos. 22-ENV-00084 and 23-ENV-00004.  The parties were afforded opportunities to submit post-trial memoranda and proposed Findings of Fact and Conclusions of Law.  The final post-trial filings were submitted on January 18, 2024, and this matter was thereafter placed under advisement.

In these proceedings, Attorney Mark G. Hall represents Costco. Attorney A.J. LaRosa represents Vallee and Attorney David Grayck represents Timberlake. Attorneys Jenny Ronis and Alison Stone represent the Vermont Natural Resources Board. The Town of Colchester did not play an active role in these latest chapters of this this long-running litigation.

## Findings of Fact

### I.   General Background[1]

1.       In 2011, Costco sought municipal zoning permits from the Town of Colchester (the "Town") to operate a gas station at its property located on Lower Mountain View Drive and Hercules Drive in Colchester, Vermont. Costco's proposal was to operate the gas station full-time.

2.       Consultants for Costco and the Town reviewed the traffic implications of the gas station proposal and concluded that there would be transportation impacts unless certain traffic improvements were implemented. The improvements identified centered around the intersection of Upper/Lower Mountain View Drives and US Routes 2/7, in the vicinity of I-89 Exit 168 interchange in Colchester ("MVD Improvements").

3.       The MVD Improvements were identified to mitigate the traffic impacts of the proposed fully-operating gas station, based on an analysis of the highest hourly traffic flows on weekdays: the weekday PM peak hours.

4.       On July 25, 2012, the DRB approved Costco's Final Plat and Site Plan applications, with conditions relating to the MVD Improvements (the "Municipal Permit").

5.       Also in 2012, Costco submitted Act 250 permit amendment application #4C0288-19C seeking approval for various expansions, including the gas station.

6.       On January 24, 2013, the District #4 Environmental Commission ("Commission") issued Land Use Permit #4C0288-19C ("LUP-19C"), with conditions. The permit contemplated full-time operations of the gas station.

7.       Condition 29 of LUP-19C required Costco to construct or fund the MVD Improvements, the same improvements contemplated in the Site Plan Permit, unless "the Exit 16 corridor improvements are under construction."

---

[1] This section incorporates significant portions of background from the Court's August 31 and September 2, 2021 entry orders. Because those decisions were in response to motions for summary judgment, they did not make specific factual findings relevant outside of those decisions. See City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332. After further review, the Court has determined that these facts are adequately supported by the record now before us.

8.    The MVD improvements are part of a larger project undertaken by the Vermont Agency of Transportation ("VTrans"), which includes other improvements to the intersections between Routes 2/7 and the I-89 Exit 16 interchange on and off ramps.  This VTrans initiative is intended to alleviate significant preexisting traffic concerns and congestion in the area and is known both as the Diverging Diamond Interchange ("DDI") project as well as the Exit 16 Improvements.

9.    Vallee and Timberlake appealed the Municipal Permit and LUP-19C approvals to this Court along with "all [other] applicable local and state permit determinations issued in favor of Costco's propos[al]."  *See* In re Costco Stormwater Discharge Permit Application, Nos. 75-6-12 Vtec, 104-8-12 Vtec, 132-10-13 Vtec, 41-4-13 Vtec, and 59-5-14 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Aug. 27, 2015) (Durkin, J.) [hereinafter "Costco Act 250 and Site Plan Amendment Applications, No. 41-4-13 Vtec and 104-8-12 Vtec."].

10.   When the appeal of Costco's LUP-19C was heard on the merits, VTrans had already begun pursuing separate permits for the DDI project: it submitted an Act 250 application for the project in late 2013.  *See* Costco Act 250 Application, No. 41-4-13 Vtec at 6 (Aug. 27, 2015).

11.   Traffic impacts were among the central issues in both permit appeals.  No party appealed Condition 11(b) or Condition 29 requiring the implementation of the MVD Improvements, but Vallee and Timberlake argued for a further condition that would prohibit Costco from operating the gas station until the entire DDI project was completed.  *See* id. at 7, 15.

12.   The Court noted: "Both [Vallee and Timberlake] operate convenience store/gas station facilities in the vicinity of the I-89 Exit 16 junction; both of their commercial operations contribute to and are sometimes negatively impacted by the area traffic.  In fact, even though R.L. Vallee has advocated for a condition . . . that . . . would prohibit Costco from occupying or operating its proposed improvements until after all planned VTrans highway improvements are completed, R.L. Vallee has served as one of the principal objectors to the VTrans project permit application."  Id. at 7.

13.   The Court also noted that one estimate found the DDI project could take "ten or more years" to finish and declined to impose a condition requiring Costco's operations to wait for the completion of all of VTrans' proposed improvements.  *See* id. at 16, 38 (concluding that there was not "a sufficient correlation between the proportions of traffic contributed by Costco to warrant" such a condition).

14.   Instead, the Court accepted Costco's proposed mitigation: the MVD and signal timing improvements.  The Court concluded that the improvements would "fully mitigate" any traffic impacts contributed by Costco's expansion plans.  *See* id. at 45.

3

15. The Court and the parties were cognizant that the MVD Improvements were related to VTrans' DDI project and could be delayed by appeals or other complications. The Court acknowledged that Costco could either wait for VTrans to begin construction on the Exit 16 Improvements or construct the MVD Improvements itself. *See* id. at 8, 14.

16. Ultimately, the Court approved both permits subject to the Court's decision and the unappealed terms and conditions imposed by the DRB and Commission. *See* id. at 51.

17. Though this Court's decision on the Municipal Permit was not appealed, Vallee and Timberlake did appeal the decision as to other issues, including traffic mitigation under Act 250. In 2016, the Supreme Court affirmed this Court's conclusion that Costco's proposed traffic Improvements were sufficient to mitigate "the adverse traffic impacts caused by the Costco project." *See* In re Costco Stormwater Discharge Permit, 2016 VT 86, ¶¶ 11–14, 202 Vt. 564.

18. In 2016, Costco and the Town entered into a Memorandum of Understanding ("MOU")[2] concerning Costco's proposed traffic mitigation, which states:

> Town of Colchester recognizes that the traffic improvements of the Act 250 approval fulfill the requirement of the DRB Approval for off-site mitigation. Costco must comply with the Traffic Mitigation requirements of its Act 250 Approval that will therefore satisfy Condition 11b of the Development Review Board Approval… such that the building permit for the Project can be issued.

19. In November of 2016, VTrans received the necessary Act 250 permits for the DDI project. *See* Land Use Permit # 4C1271, Findings of Fact, Conclusions of Law, and Order (Dist. #4 Envtl. Comm. Nov. 28, 2016).

20. Vallee and Timberlake appealed those permits to this Court, and the Court approved the DDI project in 2018. *See* Diverging Diamond Interchange SW Permit, Nos. 50-6-16 Vtec and 169-12-16 Vtec (Vt. Super. Ct. Envtl. Div. June 1, 2018) (Walsh, J.).

21. Vallee and Timberlake then appealed to the Vermont Supreme Court, and in 2019 the Supreme Court affirmed in part, reversed in part, and remanded back this Court on this issue of compliance with Act 250 Criterion 1 (undue water pollution). In re Diverging Diamond Interchange SW Permit, 2019 VT 57, ¶ 1, 210 Vt. 577.

---

[2] While not formally admitted as an exhibit at our November 2023 trial, the Court takes judicial notice of the existence of the 2016 MOU. *See* V.R.E. Rule 201 (A court may take judicial notice of a fact that is not subject to reasonable dispute). This MOU has been discussed in prior orders by this Court, is referenced in the DRB's Site Plan Approval that is the subject of this appeal, and was included in Costco's exhibit list, but never offered for admission at trial. Accordingly, there can be no reasonable dispute about the existence of this document or its contents.

4

22. After a trial on remand, this Court again approved VTrans' Act 250 application for the DDI project. Diverging Diamond Interchange A250, No. 169-12-16 Vtec, slip op. at 38 (Vt. Super. Ct. Envtl. Div. Apr. 16, 2020) (Walsh, J.).

23. Vallee again appealed to the Vermont Supreme Court, which affirmed this Court's decision. See In re Diverging Diamond Interchange Act 250, 2020 VT 98, ¶ 1.

**A.) Docket Nos. 20-3-20 Vtec and 48-6-20 Vtec.**

24. On July 24, 2018, Costco submitted Act 250 permit amendment application (#4C0288-19F) to the District Commission. The application seeks to amend LUP-19C, to authorize the operation of Costco's gas station only during limited off-peak traffic hours until Costco has satisfied Condition 29 of LUP-19C. Vallee Ex. 7 (Costco July 24, 2018 Act 250 Amendment Application) at 1.

25. Costco's application proposes the following hours of operation for the gas station: Weekdays (Monday through Friday) 6:00AM – 2:00PM and 6:00PM – 10:00PM. Saturday 6:00AM – 11:00AM and 2:00PM to 10:00 PM. Sunday 6:00AM to 10:00PM.

26. These hours constitute a reduction of approximately 21.5% from the hours of operation contemplated by LUP-19C. Under the proposed limited hours, the gas station would not operate during peak traffic times, including weekday PM peak hours.

27. The application seeks to allow for limited gas station operations during the pendency of the ongoing litigation and until the other requirements of LUP-19C can be completed. Under this proposal, Costco must still satisfy Condition 29 prior to full-time operation of the gas station.

28. On February 28, 2020, the Commission issued Land Use Permit #4C0288-19F ("LUP-19F) amending Condition 29 of LUP-19C and authorizing Costco to operate its gas station "during limited hours, until the roadway infrastructure work required by [LUP-19C] has been completed." The Commission limited Costco's original proposal by restricting Saturday p.m. hours to 6:00 p.m. to 10:00 p.m. See Land Use Permit #4C0288-19F, at 1 (Dist. #4 Envtl. Comm. Feb. 28, 2020). This appeal followed and has been assigned Docket No. 20-3-20 Vtec.

29. On March 19, 2020, Costco sent a letter to the Town of Colchester Zoning Administrator requesting a determination that Costco did not need a municipal site plan amendment to operate its gas station for limited hours prior to completing the MVD Improvements.

30. In the same letter, although Costco stated its belief that no amendment was necessary, it attached and filed a site plan amendment application seeking to match the approved Act 250 -19F Amendment. Thus, Costco sought an amendment to the Municipal Permit authorizing the same reduced hours of operation.

31.     On May 22, 2020, the Zoning Administrator sent a letter to Costco framed as a determination. The Zoning Administrator stated that no site plan amendment was necessary to limit the hours of operation for the gas station. As to the required MVD Improvements, she cited the MOU between Costco and the Town as stating that the traffic mitigation required by Costco's Act 250 approval would satisfy the requirements of the Municipal Permit.

32.     On May 26, 2020, Costco began operating the gas station for limited hours.

33.     On June 22, 2020, the DRB approved the Site Plan Amendment application, subject to conditions that largely mirrored the District Commission's decision. Notably, the DRB authorized operations on Saturdays from 2 p.m. to 10 p.m. The DRB did not discuss the Hildebrand/Stowe Club Highlands analysis for permit amendment requests. Costco appealed the DRB's decision to this Court on June 26, and Vallee and Timberlake followed with cross-appeals. That appeal is now before this Court under Docket No. 48-6-20 Vtec.

**B.) Docket Nos. 22-ENV-00084 and 23-ENV-00004**

34.     In 2021 and 2022, Costco commissioned Kittelson and Associates, Inc. to study signal timing modifications along the U.S. Route 2/7 corridor.

35.     In February 2022, VTrans implemented signal timing changes to the Route 2/7 corridor.

36.     Costco then prepared a traffic study, dated April 20, 2022 (the "Signal Timing Post Implementation Analysis").

37.     Based on these revised signal timing changes, Costco sought a Jurisdictional Opinion regarding its proposal to operate the gas station at full-time hours.

38.     On August 10, 2022, the District Coordinator issued Jurisdictional Opinion #4-334, concluding that a permit amendment was necessary for Costco to move to full-time hours.

39.     Costco appealed the District Coordinator's decision to this Court on September 7, 2022, and Vallee and Timberlake followed with cross-appeals. That appeal is now before this Court under Docket No. 22-ENV-00084.

40.     Also in 2022, Costco filed a permit amendment application with the Town of Colchester.

41.     On August 4, 2022, the Town Zoning Administrator ("ZA") rejected Costo's permit amendment application, explaining that no additional permits were required to expand to full-time operations.

42.     Vallee and Timberlake appealed this rejection to the Colchester DRB, which upheld the ZA's decision.

6

43.     Vallee and Timberlake appealed the DRB's decision to this Court on January 17, 2023. That appeal is now before this Court under Docket No. 23-ENV-00004.

## II.     Highway/Traffic Issues

### A.) Traffic Studies Performed by Costco

44.     In 2011, Costco's consulting firm, Kittelson & Associates, Inc., conducted a Traffic Impact Study to look at whether the site and surrounding transportation system could adequately support the proposed gas station development. Vallee Ex. 43 ("2011 TIS"). Both the District Commission and this Court relied upon the 2011 TIS to determine what mitigation was necessary for Costco to satisfy Criterion 5 and 9(k) in the 19-C proceedings.

45.     The 2011 TIS estimated that total trip generation resulting from the gas station and warehouse expansion during the weekday PM peak hour would be 155 net new trips.

46.     In 2018, seeking to operate for limited hours, Costco commissioned a supplemental TIS ("2018 TIS"), which analyzed the anticipated traffic increase associated with the Costco gas station during 31 off-peak hours. Costco Ex. 5, Attachment A.

47.     The 2018 TIS concluded that Costco could operate the gas station during the following time periods without adversely impacting the existing transportation system or exceeding state/local operational performance standards:

- Weekdays
    - 6:00 a.m. – 2:00 p.m.
    - 6:00 p.m. – 10:00 p.m.
- Saturday
    - 6:00 a.m. – 10:00 a.m.
    - 2:00 p.m. – 10:00 p.m.
- Sunday
    - 6:00 a.m. – 10:00 p.m.

48.     Both VTrans and the Town of Colchester prefer facilities to operate at Level of Service ("LOS") "C" or better, but lower levels may be acceptable if necessitated by existing traffic volumes or constraints on possible improvements. A lower LOS may be acceptable on a case-by-case basis, especially in densely settled areas. LOS at existing intersections cannot degrade more than two levels of service as a result of a proposed development.

49.     The 2018 TIS assumed that total intersection delay at the Lower Mountain View Drive intersection is acceptable if the intersection operates at LOS "E" or better under total traffic conditions, while delay at the I-89 ramps is acceptable if the intersections operate at LOS "D" or

7

better. These operational standards were selected based on existing intersection operations, state/local standards, and conversations with VTrans and Town officials. Costco Ex. 5 at 23; Testimony of Chris Tiesler.

50. In the LUP-19F proceedings, VTrans represented that the operating threshold applied to the Lower Mountain View Drive intersection should be LOS "D". VTrans recommended that the operating hours for the gas station on Saturdays be limited to 6AM-10AM and 6PM-10PM.

51. The District Commission, adopted VTrans' LOS "D" standard for all three intersections, thus requiring the gas station to remain closed between 2:00pm and 6:00pm on Saturdays.

52. Without Costco's gas station traffic, the Lower Mountain View Drive intersection operates at LOS "D" between 2:00 p.m. and 6:00 p.m. on Saturdays. With Costco gas station traffic, that intersection operates at LOS "E."

53. Costco's 2018 Supplemental Analysis showed that under no circumstances would the addition of gas station traffic degrade LOS by more than two levels. The only time period where LOS would degrade two levels was on Sunday from 10:00 – 11:00 a.m. (B to D) at the Lower Mountain View Drive intersection.

54. After opening the gas station to its members on May 26, 2020, Costco commissioned Kittelson & Associates to collect and analyze traffic data at the gas station and surrounding transportation network. Costco Ex. 5 ("2020 Post Gas Station Analysis"). Data was collected for six days in June (June 4-9) and four days in July (July 2-3 and 5-6), 2020.

55. As with the 2018 TIS, the 2020 Post Gas Station Analysis included a shoulder hour analysis to evaluate traffic operations at the LMVD intersection during the one-hour periods leading up to and following the gas station closure. Both studies show that Costco can operate during the shoulder hours safely within LOS C or better.

56. The Post Gas Station Analysis showed that the LOS on the adjacent roadway network is not adversely affected by the limited hours operations.

**B.) Signal Timing Modifications**

57. In accordance with Condition 10(e) of LUP-19F and Condition 29(e) of LUP-19C, Costco commissioned Kittelson and Associates, Inc. to study signal timing modifications along the U.S. Route 2/7 corridor. Costco Ex. 6, Costco Gas Station and Warehouse Expansion Signal Timing Adjustment Analysis (Dec. 13, 2021) ("Pre-implementation Analysis").

58. The Pre-implementation Analysis utilized microsimulation modeling to evaluate intersection operations at the three key intersections along Route 7 (the I-89 ramps and Lower Mountain View Drive) in accordance with the applicable VTrans guidelines for Design Hourly Volumes.

59. The analysis demonstrated that implementation of revised signal timings will result in LOS D or better at all three intersections with only two exceptions.[3] Costco Ex. 6 at 18.

60. The recommendations from the Pre-implementation Analysis were provided to VTrans and implemented in mid-February 2022.

61. Kittelson & Associates then conducted a post-implementation signal timing analysis using data collected in March 2022 and adjusted according to VTrans' policy for Design Hourly Volumes. Costco Ex. 7, Signal Timing Post-Implementation Analysis (April 20, 2022).

62. The post-implementation analysis showed that the studied intersections operate at LOS D or better during all peak periods. In some cases, LOS actually improved relative to the baseline conditions, even with traffic volumes representing full-time operation of the Costco gas station and warehouse expansion.

63. The Court finds both the pre- and post-implementation studies to be highly credible and indicative of the performance impacts caused by implementation of signal timing revisions.[4]

64. Taken together, the pre- and post-implementation studies show that the revised signal timings will mitigate the impact of added traffic generated by both limited and full-time operations of the gas station such that the overall performance of the Route 7 corridor during peak hour conditions satisfies VTrans' level of service policy.

**C.) Traffic Safety**

65. The 2020 Post Gas Station Analysis looked at whether any traffic safety issues might result from Costco's limited hours operations of the gas station. Costco Ex. 5 at 7. This analysis involved capturing drone footage of traffic signal queuing in the overall area, as well as collecting crash report data from 2011 through 2020. Costco Ex. 5 at 7-9.

---

[3] The Route 7 & I-89 NB On-Ramp/NB Off-Ramp intersection operates at LOS E under existing conditions during the weekday PM Peak hour and was projected to continue operating at LOS E with revised signal timings but with substantial queue reductions. The Route 7 and I-89 SB On-Ramp/SB Off-Ramp intersection was projected to operate at LOS E during the weekday PM peak hour, however the revised timings were not projected to materially increase que lengths over baseline conditions.

[4] Vallee provided limited peer review and testimony regarding the 2022 post-implementation analysis. The Court finds these observations helpful for understanding the nuances and inherent professional judgment decisions that are required to develop these traffic studies. However, because this review does not include any independent data collection to contradict Costco's studies, we remain convinced that Costco's 2022 Post-Implementation analysis is the best indicator of performance on the roadway network.

66.     Congestion is not a direct or statistically significant cause of crashes.

67.     Crashes are an inherently rare and random occurrence, influenced by various external factors and conditions, such as weather, lighting, driver impairment, etc.  Testimony of Chris Tiesler.

68.     Based on the credible results from this study, as well as expert testimony presented at trial, the Court finds that there is no statistical relationship between congestion caused by Costco's operations and any material traffic safety issues.

### D.) Status of DDI and MVD Improvements

69.     Construction on the DDI began in February 2023.  Testimony of Jeremy Matoski.

70.     The DDI is to be constructed in two phases.  Id.

71.     Phase 1 involved initial site work, including construction of a retaining wall, ledge removal, and utility work.  Id.

72.     Phase 2, which includes the MVD improvements, is expected to begin in Fall 2024 and be complete by the Summer 2026.  Id.

**Conclusions of Law**

## I.  Hildebrand / Stowe Club Highlands Analysis

As a threshold issue, the parties dispute whether Costco is entitled to seek an amendment to its Municipal Permit under the Rule 34(E)/Hildebrand test.  The Court previously concluded that Costco was not precluded from seeking an Act 250 permit amendment under this analysis.[5]  Costco Land Use Act 250 Permit Amend., No. 20-3-20 Vtec (Aug. 31, 2021).  However, the Court deferred its analysis of Costco's application for a site plan amendment, explaining that review would be premature because the DRB failed to conduct the Hildebrand analysis.  Having received evidence on this issue, the Court is now able to conclude that flexibility outweighs the need for finality, such that Costco may seek an amendment to its Municipal Permit and this Court may review the application on its merits.

In determining whether municipal permit conditions may be modified, the Court applies the same multifactor test outlined in Act 250 Rule 34(E) and In re Stowe Club Highlands, 166 Vt. 33 (1996).  See In re Hildebrand, 2007 VT 5, ¶ 13, 181 Vt. 568 (affirming the environmental court's application of the Stowe Club Highlands factors to a municipal zoning permit).  This test, codified in Act 250 Rule 34(E), reflects the need to "weigh[] the competing values of flexibility and finality in the

---

[5] We note that the circumstances giving rise to Costco's application for a municipal permit amendment are essentially the same as those in the Act 250 docket.  This is because the municipal permit mirrors the conditions in the Act 250 permit, and both permits are required for Costco to operate its gas station.  Accordingly, the Rule 34(E)/Hildebrand analysis is very similar to the one already conducted in this Court's August 31, 2021 Decision.

permitting process." *See* In re Waterfront Park Act 250 Amend., 2016 VT 39, ¶ 11, 201 Vt. 596 (quoting Stowe Club Highlands, 166 Vt. at 38 (1996)). First, the Court must determine "whether the applicant proposes to amend a permit condition that was included to resolve an issue critical to the issuance of the permit…." Act 250 Rules, Rule 34(E)(1).

In Docket No. 20-3-20 Vtec, the Court concluded that Condition 29 of LUP-19C was a critical condition, imposed to facilitate compliance with Act 250 Criteria 5 and 9(K). Costco Land Use Act 250 Permit Amend., No. 20-3-20 Vtec at 8-9 (Aug. 31, 2021). Costco's municipal Site Plan Amendment application adopts Condition 29 in its entirety. Since this Condition was imposed to ensure compliance with the Colchester site plan review criteria, we conclude that it is critical to the issuance of the Site Plan Amendment. Therefore, we proceed to the second step under Rule 34(E), which requires the Court to balance several factors weighing in favor of flexibility or finality.

The second step in the Rule 34(E) analysis requires balancing the competing interests of flexibility versus finality. In doing so the Court shall consider the following factors:

(a)     changes in fact, law or regulations beyond the permittee's control;

(b)     changes in technology, construction, or operations which necessitate the amendment;

(c)     other factors including innovate or alternative design which provide for a more efficient or effective means to mitigate the impact addressed by the permit condition;

(d)     other important policy considerations, including the proposed amendment's furtherance of the goals and objectives of duly adopted municipal plans;

(e)     Manifest error on the part of the District Commission, the environmental board, or the environmental court in the issuance of the permit condition; and

(f)     The degree of reliance on prior permit conditions or material representations of the applicant in prior proceeding(s) by any party, the District Commission, the environmental board, the environmental court, or any other person who has a particularized interest protected by 10 V.S.A. Ch. 151 that may be affected by the proposed amendment; and

(g)     Whether the applicant is merely seeking to relitigate the permit condition or to undermine its purpose and intent.

Act 250 Rules, Rule 34(E)(2), (3)(a)-(g). If the need for flexibility outweighs the need for finality, then the amendment application is not precluded by Rule 34(E) and the matter proceeds to the merits of the amendment application. Id. at Rule 34(E)(2).

Factor (a) concerns "changes in facts, law or regulations beyond the permittee's control." Act 250 Rules, Rule 34(E)(3)(a). Costco argues that the contentious litigation and land acquisition issues outside its control have caused lengthy delays and uncertainty surrounding the gas station project, the

MVD Improvements, and DDI project, thereby creating an unforeseeable change in factual circumstances. The Court agrees that the history of litigation surrounding Costco's gas station and VTrans' DDI project involved circumstances outside of Costco's control. The sheer number of appeals surrounding these two projects created delays and uncertainty that go beyond that which is a reasonably foreseeable part of the appeals process. These changes prompted Costco to seek permit amendments which would allow it to operate the gas station while maintaining its commitment to avoid creating adverse traffic impacts. For these reasons, we conclude that factor (a) weighs in favor of flexibility.

Factor (b) concerns "changes in technology, construction, or operation which necessitate the amendment." Id. at Rule 34(E)(3)(b). Costco is proposing a change in operations: it seeks to reduce the operating hours for the gas station by approximately 21.5 percent on a temporary basis. The potential impact of this reduction in operating hours is even more significant than the percentage suggests, since the operational hours that have been cut out correlate to the highest traffic impact hours. This operational change cannot be accomplished without an amendment. We therefore conclude that there is a change in operations necessitating the amendment which weighs in favor of flexibility.

Factor (c) asks us to consider "other factors including innovative or alternative design, which provide for a more efficient or effective means to mitigate the impact addressed by the permit condition." Id. at Rule 34(E)(3)(c). Here, Costco argues that its interim reduction in hours and signal timing modifications efficiently mitigate traffic impacts. We do not agree that these interim changes are necessarily more efficient or effective means at mitigating the impacts addressed by the original permit, which contemplates full-time hours. For that reason, and because the reduced hours may have their own traffic impacts, we conclude that Factor (c) weighs in favor of finality.

Factor (d) concerns "other important policy considerations, including the proposed amendment's furtherance of the goals and objectives of duly adopted municipal plans." The parties have not cited any relevant town plan provisions. Costco argues that this factor should not be used to deny this proposed amendment, particularly when it has already been approved by the Town. Given the lack of arguments on this issue, we conclude that this factor is neutral and does not weigh heavily toward flexibility or finality.

Factor (e) contemplates "manifest error on the part of the District Commission, the environmental board, or the environmental court in the issuance of the permit condition." Act 250

12

Rules, Rule 34(E)(3)(e). No manifest error has been perceived or alleged. Therefore, we conclude that factor (e) weighs in favor of finality.

Factor (f) relates to "the degree of reliance on prior permit conditions or material representations of the applicant in prior proceeding(s) by any party, the District Commission," or this Court. *See* id. at Rule 34(E)(3)(e). To the extent that Vallee and Timberlake relied on the prior permit conditions, this is negated by the fact that they are responsible for many of the delays prompting Costco to seek this limited hours amendment. Furthermore, the amendment that Costco seeks ultimately maintains the same core traffic mitigation requirements as the original Municipal Permit. For these reasons, we conclude that this factor is neutral.

The last consideration is factor (g), which asks "whether the applicant is merely seeking to relitigate the permit condition or undermine its purpose or intent." Act 250 Rules, Rule 34(E)(3)(g). Here, the prior Municipal Permit contemplated full-time operations, including operations during peak hours. These peak hours are now among those which the gas station will be closed under the present proposal, until such mitigation as required by Condition 29 is complete. Accordingly, we conclude that this permit amendment application does not seek to relitigate and circumvent previously adopted permit conditions. Rather Costco is merely proposing an alternative scenario that would allow it to conduct its operations while mitigating the traffic impacts that were at issue in the previous permit proceedings. Based on these considerations, we conclude that this factor weighs in favor of flexibility.

Based on the balancing of factors enumerated in Rule 34(E), we conclude that flexibility is warranted under the circumstances and prevails over the important goal of finality. Therefore, we conclude that Costco may seek an amendment to its Municipal Permit. We now turn to the merits of this Site Plan Amendment application as well as the merits of LUP-19F.

## II. Limited Hours Traffic Impacts

The limited hour appeals in Docket Nos. 20-3-20 Vtec and 48-6-20 Vtec involve essentially the same standards relative to traffic. The Town's site plan requirements in § 8.07(A)(4) of the Colchester Development Regulations are effectively identical to Criterion 5 of Act 250, requiring that a project will not cause unreasonable congestion or unsafe conditions with respect to the use of roads. This is reflected in the 2016 Memorandum of Understanding ("MOU") between Costco and the Town, stating that the traffic improvements required for Act 250 approval fulfill the off-site traffic

mitigation requirements of the Town. Accordingly, compliance with Criterion 5 and 9(k) satisfies the requirements for both the Site Plan Amendment and LUP-19F approvals.[6]

Criterion 5 directs that a proposed project "not cause unreasonable congestion or unsafe conditions" on area highways. 10 V.S.A. § 6086(a)(5). While the Court cannot deny an application solely for failure to comply with Criterion 5, the Court may impose reasonable conditions and requirements to alleviate the burdens created by a project. 10 V.S.A. § 6087(a)-(b).

At trial, neither party disputed that Costco may operate at the limited hours approved by the District Commission in the LUP-19F proceedings. In fact, Vallee asks the Court to approve Costco's limited hours applications for the hours approved by the District Commission. As a result, the only issue remaining in Docket Nos. 20-3-20 Vtec and 48-6-20 Vtec is whether Costco may operate outside of those approved hours, i.e., from 2:00 p.m. to 6:00 p.m. on Saturdays.

As demonstrated in the 2022 Post-implementation Signal Timing Analysis, all of the studied intersections along the Route 2/7 corridor operate at LOS "C" or above during the Saturday Peak Hour with Costco gas station traffic. Vallee offers no direct evidence to the contrary, but instead argues that the Court may not consider the Post-Implementation Signal Timing Analysis because it was not reviewed by the District Commission. This argument ignores the fundamental nature of this Court's de novo review, which requires us to consider the application and evidence anew, without deference to the panel below. 24 V.S.A. § 4472; Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11 (1989). This Court may consider new evidence, such as a subsequent study, so long as it does not involve "substantial changes to the form or type of an application" and "do[es] not materially change the pending application or type of permit requested." In re Wright & Boester Conditional Use Application, 2021 VT 80, ¶ 22, 215 Vt. 593 (quoting In re Sisters & Bros. Inv. Grp., LLP, 2009 VT 58, ¶ 21, 186 Vt. 103). Because the 2022 Post-Implementation Signal Timing Analysis does not alter Costco's application in any way, we may consider it as relevant evidence in evaluating the traffic impacts of Costco's gas station operations. Based on this evidence, we conclude that Costco's proposal to operate at limited hours, including from 2:00 p.m. – 6:00 p.m. on Saturdays, will not cause unreasonable congestion or unsafe conditions with respect to transportation, and therefore complies with Act 250 Criterion 5, as well as the Colchester Development Regulations § 8.07(A)(4).

---

[6] Act 250 Criteria 5 involves one of the unique circumstances where an opponent to a project bears the burden of persuasion as to that standard. 10 V.S.A. § 6088(b). However, with respect to the Site Plan Amendment, Costco still bears the initial burdens of production and persuasion. Even though we discuss Criteria 5 in this section, we still require Costco to meet its burden of persuasion for Site Plan approval.

14

Next, we consider whether Costco's limited hours proposal, specifically with respect to the Saturday hours, will "unnecessarily or unreasonably endanger [the area highways]… or materially jeopardize or interfere with the function, efficiency, or safety of, or the public's use or enjoyment of or access to [such highways]." 10 V.S.A. § 6086(a)(9)(K). The focus of the analysis under Criterion 9(K) is "whether a proposed project places a public investment, such as a public highway, in material jeopardy or material interference." In re Costco Act 250 Land Use Permit Amendment Application, No. 41-4-13 Vtec slip op. at 46 (Vt. Super. Ct. Envtl. Div. Aug. 27, 2015) (Durkin, J.) (cleaned up) (quoting Re: Swain Development Corp. and Philip Mans, No. 3W0445-2-EB at 33–4 (Vt. Envtl. Bd. Aug. 10, 1990)). This is a higher standard for project conformance than Criterion 5. Id. (internal citation omitted).

Even with this higher standard, we conclude that Costco's limited hour operations will not materially jeopardize or interfere with the function, efficiency, and safety of the Route 2/7 corridor and the adjacent roadway network. The traffic generated during these limited hours is sufficiently mitigated by the signal timing changes. Accordingly, we conclude that Costco's limited hour operations comply with Criterion 9(K).

## III.    Full Time Hours

The central dispute in these proceedings is whether Costco has satisfied all remaining permit conditions, such that it is entitled to operate the gas station at full-time hours. In the proceedings below, Costco received conflicting decisions from the Act 250 District Coordinator and the Town Zoning Administrator. In JO #4-334, the District Coordinator determined that Costco needed a permit amendment to operate at full time hours. This decision was issued in 2022, prior to commencement of construction of the Exit 16 Improvements. Also in 2022, Costco submitted a Site Plan Amendment application seeking to operate at full time hours. The ZA rejected Costco's filing and stated that Costco did not need an amendment to operate full-time once its permit conditions were satisfied. This decision was upheld by the Colchester DRB. Costco, along with the NRB, now argues that both decisions are now moot because construction has begun on the Exit 16 Improvements.[7] In response, Vallee argues that this Court lacks jurisdiction to evaluate any hours

---

[7] To the extent that Costco and the NRB argue these appeals are moot simply because Costco has satisfied its permit conditions, we disagree. A case becomes moot when there is no longer an actual controversy, or the parties no longer have a legally cognizable interest in the outcome of the case. Handy v. Fiske, 2023 VT 46, ¶5 (citations omitted). On August 4, 2022, the Colchester Zoning Administrator determined that Costco had satisfied all relevant traffic conditions, such that it did not need an additional permit amendment. Later, on August 10, 2022, the District Coordinator issued JO 4-334 in response to Costco's request for a jurisdictional opinion "regarding a proposal to construct and utilize its warehouse expansion and operate the fueling station at full-time hours." Vallee Ex. 30 at 1. It is undisputed that when

outside of those limited hours that Costco sought in its -19F and Site Plan Amendment applications. We first address Vallee's jurisdictional argument, which, for the reasons detailed below, we conclude is without merit, then turn to the interpretation of Costco's permit conditions and their compliance with Act 250 and the Town's Development Regulations.

**A.) Jurisdiction over full-time hours**

Vallee suggests that this Court can only review Costco's application for limited hours because no other hours were reviewed by the tribunals below or preserved for this Court on appeal. It is true that this Court is limited to issues that the DRB or District Commission had authority to address. See In re Torres, 154 Vt. 233, 235 (1990) (explaining that Court's authority on appeal is as broad as the powers of the panel below). Furthermore, our jurisdiction is limited by the issues raised in an appellant's statement of questions ("SOQ"). In re Conlon CU Permit, No. 2-1-12 Vtec. slip op. at 1 (Vt. Super. Ct. Envtl. Div. Aug. 30, 2012) (Durkin, J.). Therefore, we look to the scope of the applications presented below and the various SOQs that were filed in these coordinated proceedings in order to determine our jurisdiction over Costco's request to operate at full-time hours.

In reviewing Costco's LUP-19F application, it appears that Costco did not merely apply for limited hours approval.[8] Rather, Costco sought approval to operate the gas station at limited hours *until* it satisfied Condition 29 of LUP-19C, at which point it would be allowed to operate full-time.[9] Both the DRB and District Commission had the opportunity to reconsider and amend Condition 29, which they did by adopting Condition 10 of LUP-19F. Thus, the tribunals below had the opportunity to consider Costco's request to operate at limited hours, as well as the opportunity to reconsider the necessary conditions for full-time operations. Therefore, this Court has jurisdiction over Costco's request to operate at full-time hours, assuming the issue was also raised in the SOQ.

---

these two decisions were issued, no construction on the DDI had occurred, and therefore, Condition 10(a) was not satisfied. Both of these decisions were subsequently appealed to this Court. While the appeals were pending before this Court, VTrans began construction on the DDI, thus satisfying Condition 10(a). Despite this intervening event, the underlying issue in both decisions is still before this Court, i.e., "[w]hether Costco has satisfied all traffic conditions of the Act 250 permit, LUP #4C0288-19F necessary for it to operate its fueling station without limits to particular hours." Costco's Statement of Questions, filed September 28, 2022. Because this is still a live controversy, the resolution of which would grant Costco, the applicant, effective relief, we conclude that the Zoning Administrator's Letter and JO 4-334 are not moot.

[8] The same is true for Costco's Site Plan Amendment application, filed on March 19, 2020, which refers to the LUP-19F approval for the relevant hours and conditions.

[9] Costco's Act 250 amendment application provides the following general description of the project: "[t]his application is to amend condition 29 of 4C0288-19C to allow the gas fuel pumps to be open during off-peak traffic hours… prior to the construction of the VTrans Double Crossover Diamond Improvement project." Vallee Ex. 7 at 5.

16

Turning to the various Statements of Questions, Costco's Question 1 in Docket No. 22-ENV-00084 asks whether "Costco has satisfied all traffic conditions of the Act 250 permit, LUP #4C0288-19F, necessary for it to operate its fueling station without limits to particular hours." Costco's Statement of Questions, filed September 28, 2022. In Docket No. 23-ENV-0004, Vallee asks whether: "[t]o the extent any jurisdiction exists, does Costco require a permit amendment to operate for full time hours." Vallee's Statement of Questions, filed February 7, 2023. These two Questions show that the issue of full-time hours was raised with respect to both permits. Therefore, Costco's request to operate the gas station at full-time hours has been adequately preserved for this Court's review on appeal, and therefore we need not remand to the DRB and District Commission to consider these hours.

**B.) Conditions 10(a) and (e)**

The resolution of these proceedings centers on our interpretation of Condition 10 of LUP-19F, which is incorporated in the Town's Site Plan Amendment approval. Condition 10 of LUP-19F provides that:

(a) Permittees will construct or fund the construction of dual westbound left-turn lanes and an exclusive northbound right-turn lane at US Route 7/Lower Mountain View Drive, a second right-turn lane on the eastbound approach of Upper Mountain View Drive, and the storage length for the westbound through/right-turn lane shall be increased from 170' to 200' (collectively referred to as the "LMVD Improvements"). Construction of the LMVD Improvements shall be made prior to the occupancy of the warehouse expansion and full-time operation of the gas fueling station unless the Exit 16 Improvements are under construction.

…

(e) If the Vermont Agency of Transportation has not commenced construction and made substantial progress toward completion of the Exit 16 Improvements and the Permittee wishes to open the warehouse expansion or conduct full-time operation of the gasoline station, then the Permittee shall pay for the evaluation and implementation of modified signal timings along the US Route 7 corridor.

In construing permit conditions, the Court relies on the normal rules of statutory construction. Agency of Nat. Res. v. Weston, 2003 VT 58, ¶ 16, 175 Vt. 573. It is our principal goal to implement the intent of the drafters. In re Confluence Behavioral Health, LLC, 2017 VT 112, ¶ 20, 206 Vt. 302. In doing so, the Court construes words "according to their plain and ordinary meaning, giving effect to the whole and every part of the [permit]." Id. (quotation omitted).

The plain and ordinary meaning of Condition 10 authorizes Costco to operate full-time once the Exit 16 Improvements are under construction and upon implementation of modified signal timings. Vallee argues that because Phase 1 of the Exit 16 Project did not include the actual

17

construction of the LMVD Improvements, Condition 10(a) is not satisfied. However, this interpretation adds language to Condition 10(a) which does not exist. Condition 10 distinguishes between the LMVD Improvements and Exit 16 Improvements. The LMVD Improvements are defined as "dual westbound left-turn lanes and an exclusive northbound right-turn lane at US Route 7/Lower Mountain View Drive, a second right-turn lane on the eastbound approach of Upper Mountain View Drive, and the storage length for the westbound through/right-turn lane shall be increased from 170' to 200'." In contrast, the Exit 16 Improvements are defined as "the preferred mitigation and improvement strategy for the US 7/I-89 interchange." These terms have been used separately, and it is well understood that the Exit 16 Improvements include the LMVD Improvements, as well as some additional improvements. Vallee's interpretation would render these terms duplicative, and thus create a meaningless distinction.

Rather, Condition 10(a) creates a scenario where Costco must construct or fund the construction of the LMVD Improvements *unless* the Exit 16 Improvements are under construction, at which point Costco may begin full-time operations.[10] The undisputed testimony at trial showed that the Exit 16 Improvements are under construction. Phase 1 began in February 2023 and is already complete. Phase 2 is expected to begin in Fall 2024. Accordingly, based on the plain language of Condition 10(a), we conclude that this condition has been satisfied.

With respect to Condition 10(e), there is no dispute that the required signal timing modifications have been studied and implemented. Accordingly, Condition 10(e) has been satisfied.

Taken together, Conditions 10(a) and (e) create a pathway for Costco to operate the gas station under full-time hours in compliance with Act 250 Criterion 5 and 9(K), as well as § 8.07 of the Town Development Regulations.[11] These conditions impose requirements to mitigate traffic impacts and

---

[10] Vallee and Timberlake argue that Condition 10(a) is an impermissible condition subsequent. We recognize the awkward situation that this condition creates, whereas two alternate scenarios are contemplated for Costco to be able to operate full-time. However, we disagree that this situation creates a condition subsequent, and conclude that Condition (a) is self-executing. A condition subsequent is "[a] condition that, if it occurs, will bring something else to an end; an event the existence of which, by agreement of the parties, discharges a duty of performance that has arisen." CONDITION, Black's Law Dictionary (11th ed. 2019). Here, there are no duties of performance that will terminate when Condition 10(a) is satisfied. Rather, Costco must satisfy this condition before it can operate full-time. A condition subsequent would only result if we were to adopt Vallee and Timberlake's argument that Costco must seek additional permit amendments upon satisfying this Condition. Instead, Condition 10(a) ensures that the necessary mitigation measures are underway prior to full-time operations, such that Costco can operate full-time in compliance with the relevant Act 250 and Town traffic standards.

[11] To the extent that Vallee and Timberlake argue these criteria can't be met until the LMVD Improvements are fully constructed, this constitutes an impermissible collateral attack on a final and binding permit condition. *See* Town of Pawlet v. Banyai, 2024 VT 13, ¶ 8 (explaining that a court's final judgments are conclusive upon the parties and cannot be collaterally attacked in subsequent proceedings). When this Court previously approved LUP-19C, it determined that the required traffic mitigation in Condition 29 satisfied the relevant Act 250 criteria and Town traffic standards. Costco Act

allow for full-time operations with assurances that the additional roadway infrastructure work will be completed. Both this Court and the Vermont Supreme Court have previously held that the Exit 16 Improvements allow Costco to operate at full-time hours in compliance with Act 250 Criterion 5 and 9(K), as well as § 8.07 of the Town Development Regulations. Costco Act 250 and Site Plan Amendment Applications, No. 41-4-13 Vtec and 104-8-12 Vtec slip op. at 37–39, 43–47; In re Costco Stormwater Discharge Permit, 2016 VT 86, ¶¶ 12–14. Additionally, Costco demonstrated that the modified signal timings allow it to operate the gas station at full-time hours without causing an undue adverse impact on the roadway network. With the required improvements implemented and/or under construction, there are no remaining traffic issues for this Court to adjudicate. The record evidence supports our conclusion that Conditions 10(a) and (e) have both been met, such that Costco may conduct full-time operations of the gas station in compliance with the relevant Act 250 and Town traffic standards.

This conclusion leads to the inevitable end of these proceedings. Inherent to this conclusion is our understanding that no further permit amendments are needed for Costco to operate at full-time hours. This was the underlying issue in Docket Nos. 22-ENV-00084 and 23-ENV-00004. Both LUP-19F and the Site Plan Amendment specifically contemplate Costco's full-time operations upon satisfaction of Condition 29 of LUP-19C. The Court remains convinced that this Condition adequately mitigates the traffic impacts caused by Costco's limited- and full-time operations of the gas station. Such has been the case since our decision nearly a decade ago, and which has only been confirmed by subsequent events and the passage of time.

## Conclusion

Based on the Factual Findings and Legal Conclusions above, we hereby Order as follows:

A. In Costco Land Use Permit Amendment, Docket No. 20-3-20 Vtec, we do hereby modify LUP-19F to authorize Costco to operate at limited hours, including from 2:00p.m. – 6:00 p.m. on Saturdays, until the requirements of Land Use Permit #4C0288-19C have been satisfied. Because those requirements have since been satisfied, we conclude that Costco is entitled to full-time gas station operations under this permit.

B. In Costco Wholesale Corp. JO Appeal, Docket No. 22-ENV-00084, we do hereby reverse the District Coordinator's decision and conclude that Costco has satisfied all remaining permit conditions such that it does not need a permit amendment to operate at full-time hours.

---

250 and Site Plan Amendment Applications, No. 41-4-13 Vtec and 104-8-12 Vtec slip op. at 37–39, 43–47. That decision was affirmed by the Vermont Supreme Court and is therefore final and binding. In re Costco Stormwater Discharge Permit, 2016 VT 86, ¶ 46. It is undisputed that Condition 29 was thereafter adopted into Costco's amended permits by Condition 10, and that the two Conditions are substantially similar. Accordingly, the issue of whether Condition 10 satisfies the applicable traffic standards has already been conclusively determined.

C. In <u>Costco Wholesale Corp. Site Plan Amendment</u>, No. 48-6-20 Vtec, we do hereby affirm and uphold the DRB's June 22, 2020 Permit as written, authorizing Costco to operate the fuel station at limited hours until the requirements of LUP-19C have been satisfied. Because those requirements have since been satisfied, we conclude that Costco is entitled to full-time gas station operations under this permit.

D. In <u>Costco Wholesale Administrative Decision Appeal</u>, No. 23-ENV-00004, we do hereby affirm the DRB's approval of the Zoning Administrator's August 4, 2022 letter, and we conclude that Costco has satisfied all remaining permit conditions such that it does not need a permit amendment to operate at full-time hours.

This completes the current proceedings before this Court. A Judgment Order accompanies this Merits Decision.

Electronically signed at Burlington, Vermont on Friday, April 12, 2024, pursuant to V.R.E.F. 9(d).

Thomas S. Durkin, Superior Judge
Superior Court, Environmental Division